# THOMPSON PEGG and others, *vs.* RICHARD C. WARFORD.

In cases of caveats to wills, the orphans courts have the power to compel a joinder of all the caveators, when the issues they desire *are the same in substance*.

But in the case of several wills made by the same party, and where the interests of the different caveators are to some extent conflicting, there ought not to be a joinder, the ends proposed not being the same.

Under the act of 1798, ch. 101, at *any stage* of the proceedings *before final adjudication*, either party may require an issue, and the orphans court is not at liberty to refuse it.

Even after the finding of a jury on issues, a party in interest can require another issue or issues in regard to *facts* not covered by those pronounced upon, if the final judgment on the paper purporting to be a will has not been rendered.

But no issue can be granted which substantially embraces the same question that has been pronounced upon by the jury, for their finding in regard to it, is conclusive and binding on the whole world.

Nor can the same issue be granted on the several applications of different parties unless they be joined as plaintiffs or defendants, so as to produce by the trial but one and the same verdict.

When an issue is once granted, the functions of the orphans court, so far as that question is concerned, are suspended until the finding of the jury be certified, and when that is done, the court has no discretion, but is imperatively required to enter up judgment in conformity thereto.

When on the application of one party, an issue is transmitted to a court of law for trial, the granting on the application of another party, of substantially the same issue to be tried before another jury, is a mere nullity—a void act.

On an appeal from an order of the orphans court awarding the same issue a second time, this court would be bound to denounce it as utterly void and as of none effect.

The orphans court has no power to revoke or remodel issues *after* they have been transmitted, but until then they have the power to compel the joinder of parties who desire *the same issue.*

By consent of the parties to the proceedings, issues which have been granted and transmitted may be abandoned in the court of law where they are pending for trial, and others framed by the orphans court.

Though the jury may find affirmatively or negatively on the question submitted, yet such finding may not determine the validity of the will, for there may be facts outside of the verdict, and not inconsistent with it which will decide the question.

Pegg, *et al.*, *vs.* Warford.

The orphans court are bound to consider all testimony adduced before them on the same subject which is not *inconsistent with the finding of the jury*, but so far as the facts covered by the verdict are involved, they are settled unalterably by it, and all other facts contrariwise are to be disregarded.

Whenever a bill or petition be filed, whether or not the other parties are cited to appear, if, in point of fact, they do appear and answer, the proceedings are plenary.

APPEAL from the Orphans Court of Baltimore city.

This appeal was taken from an order of the court below, dismissing a petition of the appellants. The facts of the case are set out in the opinion of this court, and render any additional statement unnecessary, except to state that the issues granted upon the application of the appellants, Pegg and others, referred to in this opinion, were six in number, and in substance as follows :

1st. Whether the will of the 6th of April 1848, was executed by said Rachel Colvin, when she was of sound and disposing mind, and capable of executing a valid deed or contract?

2nd. Whether it was executed by her under the influence of suggestions or importunities, when her mind from its diseased or enfeebled state was unable to resist the same ?

3rd. Whether the will of the 30th of October 1845, was duly executed and published ?

4th. Whether this was revoked by the will of the 6th of April 1848?

5th. Whether it was revoked in any other manner than by the will of 1848?

6th. Whether said Rachel was prevented by the fraudulent concealment of the will of 1845, by any person or persons, from revoking the same by burning, cancelling or otherwise ?

In the trial of these issues, the order directed the petitioners Pegg and others, to be plaintiffs, and Richard C. Warford to be defendant.

The issues granted upon the application of Landis and others, were also six in number and in substance as follows :

1st. Was Rachel Colvin at the time of executing the will of 1848, of sound and disposing mind, and capable of executing a valid deed or contract?

2nd. Was she at or before that time urged to execute the same by importunities, which she was too weak to resist, and under circumstances which did not leave her free as to the disposition of her estate?

3rd. Was she at or before that time urged to execute the same by undue influence, which she was too weak to resist? &c.

4th. Was this will and the execution thereof, her free and voluntary act, to which she was induced with a knowledge of its contents, and without the exercise of a dominion or influence by some person or persons which prevented the exercise of a sound discretion?

5th. Was it and its execution procured by undue influence, fraudulent devices, importunities, misrepresentations, and deceits practiced upon and to her?

6th. Was she at any time subsequent to its execution, desirous of altering or cancelling the same, and was she prevented therefrom by management, fraud, undue influence or importunities?

The order directed the petitioners, Landis and others, to be plaintiffs at the trial of these issues, and Richard C. Warford to be defendant.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK J.

*Henry Winter Davis* for the appellants.

It is more important that these cases should be *decided* than *how* they are decided. The proceedings are solely under the act of 1798, ch. 101, and it is singular that this act no where *particularly* prescribes the *proceedings* upon a *caveat*. *Sub-ch.* 2, *secs.* 6, 7, 8, 9, 10, 11; *Sub-ch.* 18, *secs.* 16 and 17; and *Sub-ch.* 8, *sec.* 20, contain all that relates to plenary and summary proceedings, and to the granting and trial of issues. We insist, *first*, that there was error in the court below, in not granting the prayer of the petition for the ordering of plenary proceedings, as issues can only be awarded on such proceedings. If there be plenary proceedings, a party can call for

issues whenever there is any *fact* in dispute to be tried. Now none of the applications in this case are plenary proceedings,— they make no persons defendants, but are mere *caveats*,—mere informal, *ex-parte*, and summary proceedings. Filing their answers does not make the parties defendants. 9 *G. & J.*, 324. A will may may be probated upon summary as well as plenary proceedings. 5 *H. & J.*, 175, *Barroll and Cannell, vs. Reading.* What are plenary proceedings, may be tested by what are formal proceedings in chancery or the ecclesiastical courts, and in such courts these proceedings would not be plenary. The fact that the petition is in writing does not make the proceedings plenary. There must be a substantial allegation of your case, and making a party defendant by calling on him to answer. A *caveat* is not a plenary proceeding, until some one comes in and offers to probate the will, until then it is a mere *warning* to the world.

But, *secondly*, suppose the proceedings to be plenary, there still have been errors committed by the orphans court, which it has the power to correct before *final judgment.* The fact that one party comes in and files a *caveat* and asks for issues does not exclude the others ; the only limit to such proceedings is the rendition of the *final judgment.* 5 *H. & J.*, 175. There must then have been some time at which the court had the power to blend the several proceedings. This should have been done and but *one set* of issues awarded, in which all the caveators should be made to unite. It is error not to make the proper parties to the caveat. 8 *Gill*, 31, *Marriott vs. Handy.* 9 *Gill*, 456, *Glass vs. Ramsey.* The court must have the power, on motion of a party, to revoke and modify any issues awarded at any time before trial, and in this case they ought, in order to prevent confusion and conflict between the verdicts on the same will, to revoke the issues, make all the caveators parties to the same issues, and order *one trial.* Notwithstanding the transmission of issues, *the cause* still remains in the orphans court. 6 *How.*, 62, *Van Ness vs. Van Ness.* The court of law to which the issues are sent, has no jurisdiction of the case, it cannot render judgment, but

simply certifies the verdict of the jury to the orphans court, upon which it is conclusive only as to the points embraced in the issue. 2 *H. & G.*, 42. The court of chancery never loses jurisdiction of a case when it sends issues to be tried; so with a circuit court when a certificate of division is sent up to the supreme court.

*Geo. W. Brown* and *Wm. Schley* for the appellees.

1st. The appellants caveated the will, and issues were sent upon their *own motion*, and they cannot upon the state of facts made in their petition, ask for a revocation of them. The orphans court has no power to recall issues after they have been transmitted to a *court of law* for trial, the jurisdiction of a court of law attached immediately on the receipt of the issues, and the orphans court could not divest it of its jurisdiction. The jurisdiction of the orphans court was temporarily suspended until the return of the issues. The court of law in the case of issues sent, stands in the place of the orphans court, which cannot act until the certificate of the verdict is returned to them. Before the issues were sent, the orphans court had power to modify or change them as it choose, but the moment they were sent another tribunal had jurisdiction,—it was a case *there* pending,—its jurisdiction was *exclusive* for the time.

2nd. Even if the orphans court could have recalled the issues, and resumed jurisdiction *de novo*, with the consent of all parties to the issues, still where want of consent appeared that court could not rightfully interfere, nor would the court of law have refused to try the issues, if any of the parties had claimed the exercise of its jurisdiction, even if the orphans court had by its order requested the issues to be returned.

3rd. At all events the orphans court did right to refuse the application of the appellants, as no sufficient reason was set forth and established, why the issues transmitted on their application should be recalled, even if the power of the court were conceded.

4th. But if the court in its discretion could have validly

recalled the issues, if it had deemed it expedient, still no appeal will lie from its decision refusing to recall them. 5 *Gill*, 506. 1 *Bland*, 5.

5th. The proceedings were plenary. The issue of a summons is not the test whether proceedings are plenary or summary, for this may be done upon application of any one *ore tenus;* nor is it necessary that there should be a *contest between parties* to make proceedings plenary. The test is whether the application, bill, or petition is in *writing*, if it is the proceedings are plenary. See, *act of* 1818, *ch.* 204, *sec.* 3.

LE GRAND, C. J. delivered the opinion of this court.

This is an appeal from an order of the orphans court for Baltimore city.

It appears from the record, that on the 8th of February 1853, a paper, dated the 6*th of April* 1848, purporting to be the will of Rachel Colvin, deceased, was produced and filed in the orphans court for Baltimore city; that on the 26th of the same month, Thompson Pegg and others filed their petition or caveat, which, on the 21st April, was answered by the appellee. That on the 1st March 1853, another paper, dated the 13*th October* 1845, purporting to be the last will of Rachel Colvin, was produced and filed in the same court; and that, on the 3rd March 1853, Jesse Landis and others filed their caveat to the will of 1848; and, on the 19th March 1853, Thompson Pegg and others filed their caveat to the paper dated 13th October 1845. On the 21st April 1853, the appellee filed his answer to the petition or caveat of Pegg and others to the paper dated the 13th October 1845, and, on the same day, filed his answer to the petition or caveat of Landis and others to the same paper. On the 17th May 1853, *on the application of Pegg and others,* the orphans court directed issues, embracing the papers purporting to be wills of date 1845 and 1848, to be sent to the superior court for Baltimore city for trial; and on the written application of Landis and others, issues were ordered touching the will of 1848. On the 23rd of October 1853, Regnear Van Sickle

and others filed their caveat against the paper of the 6*th April* 1848, which was answered by appellee on the 12th November following.

On the 5th November 1853, appellants filed their petition, which, after reciting the proceedings of the orphans court, prays that the issues which had been granted "may be revoked, and that plenary proceedings may be ordered, and that new issues may be framed and transmitted for trial to the circuit court for Baltimore county, and that said parties, (those who had filed caveats,) may be ordered to join in the same, or that the said issues granted upon the application of petitioners may be revoked, and new ones framed and transmitted to the circuit court of Baltimore county for trial."

On the 12th November 1853, appellee, and Landis and others, filed their separate answers to the petition of appellants, the appellee resisting the granting of the prayer of the petition, and Landis and others acquiescing in it, except in so far as they are required to join with the petitioners and to abandon the issues ordered on their own application. On the 14th November 1853, Van Sickle and others filed their answer and consent to the prayer of the petitioners. On the 26th November 1853, the court dismissed the petition of the appellants, and it is from this order of dismissal the appeal is taken.

These facts exhibit a singularity of case without parallel in the published history of the judicature of the State. In all the cases, with which we are acquainted, in which issues have been ordered by the orphans courts of our State, the caveators have, so far as the records show, harmonized in their efforts to set aside the papers propounded as wills, and therefore, in each case, there has been but one set of issues. The uniformity of this practice would seem to impress it with the character of being the best, and there can scarcely be a doubt on the mind of any one that when it is practicable it ought to be observed. We, therefore, hold it proper for the orphans court to order a joinder of all the caveators when the issues they desire *are the same in substance;* but, we can very

readily understand, that in a case where there is more than one paper propounded as a testamentary disposition of property, the interests of the different caveators may be, to a certain extent, conflicting, and this case furnishes an illustration of the principle. It may be to the interest of some of them to sustain the will of 1845, whilst they assail that of 1848. It would be manifestly productive of confusion to compel such of them to join with those who not only assail the will of 1848, but also that of 1845. There ought not to be a joinder of parties whose proposed ends are not the same, but where they are so there is, in our judgment, a power in the court to compel it.

It is a somewhat remarkable circumstance, that notwithstanding the great care bestowed upon the draught of the act of 1798, chapter 101, and, in general, its minuteness, and particularity of detail and direction, there should have been so little ascertained by it in regard to the granting and trial of issues. The only parts of the act having reference to this matter are the 16th and 17th sections of sub-chapter 15, and the 20th section of sub-chapter 8.

By the 16th section of sub-chapter 15, it is provided, that "whenever either of the parties having a contest in the orphans court shall require it, the said court may direct a plenary proceeding, by bill or petition, to which there shall be an answer on oath," &c.; and, by the 17th section of the same sub-chapter, it is enacted, "on such plenary proceedings all depositions shall be taken in writing and recorded, and in case either party shall require, the court shall direct an issue or issues to be made up, and sent to any court of law which may be most convenient, under all circumstances, for trying the same, and the said issue or issues shall be tried in the said court of law as soon as may be, without any continuance longer than is necessary to procure the attendance of a witness or witnesses; and the power of the court of law, and proceedings thereto relative, *shall be as hereinbefore directed respecting the trial of issues*, and the orphans court shall give judgment, or decree upon the bill and answer, or upon bill,

answer, depositions, or finding of the jury," &c. The reference in this section, by the words "as hereinbefore directed," is to the 20th section of sub-chapter 8, which provides for the case of an executor or administrator being indebted to the estate of the deceased, and authorises the court, on the petition of any person interested in the administration, to direct an issue or issues to be tried, and declares "the same shall be tried in any court of law proper for the trial and most convenient under all circumstances, and the court of law shall have power to direct the jury and grant a new trial, as if the issue or issues were in a suit therein instituted," &c.

There is nothing in either of these sections, nor in any other part of the act of 1798, nor indeed in any of the supplements thereto, which defines the duty of the orphans court where issues are applied for by different parties, at different times; and there is also a perfect silence as to the power of the court over the matter of granting issues when that authority has been once exercised. In regard to these matters therefore, our conclusions and reasoning must be drawn from the nature of the proceeding, the purpose proposed by the testamentary system, and the analogies of the law.

In the case of *Cain, et al., vs. Warford,* 3 *Md. Rep.,* 462, this court said, "the obvious purpose of the 16th section, (sub-chapter 15,) is to enable the court to advertise itself of the real *facts* in the case," and this also is clearly the object of the 17th section, which provides for an issue or issues. The practice of directing issues is undoubtedly borrowed from chancery and the ecclesiastical courts, and was observed in this State prior to the passage of the act of 1798. By the 9th section of the act of February 1777, chapter 8, the orphans courts were empowered to grant a plenary proceeding, and to order an issue and summon a jury for the trial of the same. Whilst, however, that act authorised the court to give judgment on the finding of the jury, it is not so clear they were bound to do so in conformity with it as they are required by the act of 1798.

Under the act of 1798, "*at any stage* of the proceedings,

*before final adjudication,* either party may require it, (an issue,) and the court is not at liberty to refuse it." *Barroll and Cannell, vs. Reading,* 5 *Har. and Johns.,* 176. From this it follows, that even after the finding of a jury on issues, a party in interest can require another issue or issues in regard to *facts* not covered by those pronounced upon, if the final judgment on the paper purporting to be a will has not been rendered. Thus if an issue be sent to a court of law which involves only the question of the execution, attestation and publication of the paper, and it be found in favor of the paper, it is still competent to the same party, or any other in interest, to require another issue or issues involving an inquiry as to the mental and disposing capacity of the testator, or the exercise of undue importunity and control over him, the practice of fraud upon him or any other fact not inconsistent with the execution, attestation and publication of the paper. No issue can be granted which substantially embraces the same question that has been pronounced upon by the jury, for their finding in regard to it is conclusive and binding on the whole world. Nor, for the same reason, can the same issue be granted on the several applications of different parties, unless they be joined as plaintiffs or defendants, so as to produce by the trial but one and the same verdict. Were different parties permitted to propound the same question to different juries, there might, and most probably would be, different verdicts, and, as an inevitable consequence, under the act of 1798, different judgments in the orphans court on the same matter. It would be absurd to impute such a folly to the act. Its purpose is to ensure certainty, and this cannot be accomplished if the same question be submitted to different juries. We hold, therefore, from the very nature of the thing, when a question is once submitted, so far as it is concerned, the functions of the orphans court are suspended until the finding of the jury be certified, and when that is done, it has no discretion in regard to it, but is imperatively required to enter up judgment in conformity thereto. And, as a consequence of this, where, on the application of one party, an issue is

Pegg, *et al.*, *vs.* Warford.

transmitted to a court of law for trial, the granting, on the application of another party, of substantially the same issue to be tried before another jury, is a mere nullity—a void act. On an appeal from an order of the orphans court awarding the same issue a second time, this court would be bound to denounce it as utterly void and of none effect.

We perceive nothing in these views obnoxious to censure from any quarter. When the question has been once fairly answered by a jury it ought to be considered as definitively settled. If the jury disregard the testimony or the court err in its instructions of the law, the party aggrieved has his remedy by a motion for a new trial, or an appeal to this court.

We do not regard the orphans court as having any power to revoke or remodel issues after they have been transmitted; until then, however, as we have said, they have the right, by virtue of a power necessarily inherent in them, to compel the joinder of parties who desire *the same issues;* and, as we have shown by the case of *Barroll vs. Reading,* 5 *H. & J.,* 176, a party has the right to require an issue up to the time of final adjudication, the appellants are entitled to an issue involving an inquiry as to the mental capacity of Miss Colvin when she executed the paper dated 13th October 1845, and the orphans court have power, in their order awarding it, to direct that it shall be tried at the same time and before the same jury which shall act upon the issues already transmitted. This secures to them all they have a right to ask—the verdict of a jury on all the questions they may think proper to propound touching the paper of 1845 or of 1848.

It does not necessarily follow, because the finding of a jury on issues be as is desired by those at whose instance they may have been awarded, that the paper shall be admitted to or denied probate as the case may be. The finding of the jury may be affirmatively or negatively on the questions submitted, and yet such finding either way may not determine the question of the validity of the paper as a will; there may be other facts outside of the verdict and not inconsistent with it which will decide the question. For instance, a jury might

find on an issue so framed that a certain paper purporting to be a last will, was executed, duly attested and published as such, and yet its *final* judgment might be against the paper as a valid will, because it might appear from testimony taken before the orphans court, or by the finding of another jury, that at the time of the execution and publication, the testator had not the requisite disposing capacity. And this being so, the orphans court have not only the right, but are bound to render their *final* judgment on the finding of different juries, where they have pronounced on *different* issues touching the same paper. They are also to consider all testimony adduced before them on the same subject *which is not inconsistent with the finding of the juries.* So far as the facts covered by the verdicts are involved, they are settled unalterably by it, and all other facts contrariwise are to be disregarded.

Whilst we are of opinion the orphans court have no power to revoke or remodel the issues transmitted to the superior court at the instance of the appellants, yet we nevertheless think, that by *consent* of the parties to the proceeding they may be abandoned in the court of law where they are pending for trial, and others framed by the orphans court without prejudice to the rights of either party.

As the prayer for plenary proceedings is also embraced in the petition of the appellants, we will remark, that we regard the proceeding which has been had on the caveat and petition of the appellants as a plenary proceeding, and that wherever a bill or petition be filed, whether or not the other parties are cited to appear, if in point of fact they do appear and answer, the proceeding is plenary.

From these reasons it appears, we are of opinion, that the appellants were entitled to issues relating to the mental capacity of Miss Colvin when she executed the paper of October 1845. In so far we disapprove of the order of the orphans court, and affirm it so far as it relates to the other matters embraced in the petition of the appellants.

*Order affirmed in part and reversed in part, and*<br/>*cause remanded, costs to await the final result.*