GEORGE Y. MAYNADIER, ADMINISTRATOR ET AL. *vs.* JOHN T. ARMSTRONG ET AL., ADMINISTRATORS. JOHN T. ARMSTRONG ET AL. *vs.* GEORGE Y. MAYNADIER ET AL.

*Appeal—Vacating Administrator's Account.—Issues From Orphans' Court to Court of Law Not to be Sent After Beginning of Trial in Orphans' Court.*

When there are cross appeals and the record has been duly transmitted and printed, it is no ground for dismissing one of the appeals that the appellants therein had not paid for any part of the record.

When an administrator's account has been passed making certain allowances for preferred claims paid by the administrator for which claims proper vouchers were not produced, the order ratifying the account should be rescinded.

A petition was filed in an Orphans' Court alleging that a certain administrator's distribution account had been improvidently passed and that certain allowances therein were improperly made and asked that the order passing the account be rescinded. Answer was filed and trial of the issues was begun before the Orphans' Court when one of the parties asked that the case be sent to a Court of law for trial. *Held,* that having elected to try the issues before the Orphans' Court and the trial having actually begun, a party is not entitled to stop the proceedings there and require the issues to be transmitted to a Court of law under Code, Art. 93, sec. 250, which provides that the Orphans' Court shall direct an issue or issues to be made up and sent to a Court of law for trial when either party to any contest upon a plenary proceeding shall require.

Appeal from the Orphans' Court of Harford County.

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. H. Harlan* (with whom was *H. A. Whitaker* on the brief), for Maynadier *et al.*

*John S. Young* (with whom was *M. H. Fahey* on the brief), for Armstrong's administrators.

BOYD, J., delivered the opinion of the Court.

There are two appeals in this record, and a motion to dismiss each. More than thirty days elapsed before the record was transmitted to this Court, but as the Register of Wills has shown that the delay was occasioned by his inability to make up the record, owing to his illness, and was not the fault of the appellants, the motion to dismiss the appeal of George Y. Maynadier, administrators *et al.*, must be overruled. The motion in the other appeal is based on the claim that those appellants had not paid for any part of the record, but as it was duly transmitted and printed, it cannot prevail. If, as contended by the appellees in that case, the appellants insisted on inserting in the record such evidence and papers as were not material, they could have had them omitted from the record prepared for them, but inasmuch as that was not done but they were included in the record now before us, there is no ground for dismissing the appeal and the motion will be overruled.

As the order from which the administrators of John Armstrong appealed was passed before the other, we will first consider it. On February 20th, 1902, George Y. Maynadier, administrator of Isaac Amoss and William E. Hanway filed a petition in the Orphans' Court of Harford County alleging that they are judgment creditors of John Armstrong, deceased, that the administrators filed an inventory of personal chattels amounting to $2,441.30, and afterwards, to wit, on February 12th, 1902, filed a list of sales which only amountsd to $1,422.-25, and the same day without notice to petitioners or other creditors, presented what purports to be a first and final account of the administrators, in which they charge themselves with the above amount of sales and nine months' interest thereon. A number of credits allowed the administrators are specifically objected to, and after these and other sums are allowed, there only remained the sum of $185.00, for which credit is claimed in the account, on the ground that it was paid over to J. Donnell Smith, on account of a bill of sale given by John Armstrong, which had been assigned to him. The petition-

ers claim that the bill of sale is not a lien and the allowance is unwarranted and they pray for relief in several ways, amongst others that the account be reopened and restated. After an answer was filed, testimony was taken and the Orphans' Court decreed that the order of February 10th, 1903, passing the account be rescinded, and from that action this appeal was taken.

The testimony of Mr. Bay, Register of Wills, shows that no vouchers were filed with the account and that it was inadvertently passed. He also said that the account "was examined and passed by the deputy or at least so marked" and on cross-examination admitted that the affidavit was made before him and the fees and tax on commissions were paid. The testimony of Mr. Fahey shows that he was acting for Mr. Armstrong, who "had some vouchers here that day to show he paid the bills he had charged himself with and which had never been filed in the Court and Mr. Bay told him it was not necessary and the account was passed as shown by the endorsement on the back of it." Sec. 242 of Art. 13 of the local code gives the Register of Wills of Harford County, during the recess of the Orphans' Court, full power and jurisdiction to do all matters and things whatsoever which the Court could do at its regular sessions, and by sec. 273 of Art. 93 of the Code of Public General Laws, as amended by Act of 1892, chapter 409, deputies of a register have power and authority in the absence of the register, to act in his place and stead in all matters pertaining to the duties of the office. But without deeming it necessary to comment on those statutes or to refer to all the credits allowed the administrators in the account, it is manifest that at least some of them could not be properly allowed, unless proven as required by the statute. For example, one item is "Spesutia Rod and Gun Club for rent for year 1900, $400.00." Sec. 89 of Art. 93 of the code provides what shall be done to establish a claim for rent, and sec. 99 says "The proof of a claim for rent in arrear, so as to render the same a preferred claim, shall be proofs and vouchers for rent aforesaid; and proof that the claim is such that a distress

therefor might be levied on said deceased's goods and chattels in the hands of the administrator." There is another item "For care of stock and harvesting crops, etc., $364.15" —three items of cost amounting to $52.40 alleged to have been paid and then the balance in hand (after getting credits amounting to $1,300.25) of $185.00 paid to J. Donnell Smith, assignee of the bill of sale above referred to. So even if we leave out of consideration the testimony of the register that the account was inadvertently passed, it is manifest that he was not justified in allowing the administrators such credits as we have mentioned, as preferred claims, unless proper vouchers for them were produced. The Orphans' Court or Register of Wills, as the case may be, should very carefully inquire into the validity of such credits before allowing them, especially when it is seen that they and other claims for costs, funeral expenses and taxes consume the whole personal estate —so that even judgment creditors are not allowed to participate in the distribution thereof. There can therefore be no doubt about the right of the Orphans' Court to pass the order of June 11th, 1903, recinding the previous order ratifying the account and that ruling will be affirmed.

The other appeal is from an order passed June 25th, 1903, refusing to send issues to the Circuit Court asked for in the petition of these appellants filed on that date. The reason assigned by the Court for that action was " because the trial of the case commenced before the Court on the 10th day of June, 1903, and adjourned until this day, when the taking of testimony commenced and a witness was on the stand in the course of examination, and it was after the Court met on this last named day, after the recess hour, that the said petition was filed." The trial referred to was under the petition originally filed February 20th, 1902, by these appellants, in which they ask for plenary proceedings. A stenographer had been appointed and the testimony was being taken when the application for issues was made. The appellants rely on the statement made in *Pegg* v. *Warford*, 4 Md. 385, where it was said " Under the Act of 1798, *at any stage* of the proceed-

ings, *before final adjudication*, either party may require it (an issue) and the Court is not at liberty to refuse." The Court cited *Barroll* v. *Reading.* 5 H. & J. 176, but both of those cases involved caveats to wills and in the latter it was said "The regular mode of proceeding in opposition to the admission of a will to probate is by caveat; *and it may often happen (and probably most frequently does) that the necessity for a plenary proceeding and a trial by jury is only discovered after a part at least of the testimony is taken,*" and then follows what is quoted above.    There can be no valid reason after a plenary proceeding has been commenced, in a case such as this, why the parties cannot determine before beginning the testimony thereunder whether they want a jury, which is the object of having issues sent to a Court of law.    No case has been cited and we recall none in this State in which, after testimony has been begun before the Court under plenary proceedings, the same questions then being inquired into have been withdrawn from the consideration of the Orphans' Court, and issues sent to a Court of law.    The testimony which had been commenced in *Barroll* v. *Reading*, was not under a plenary proceeding, but the opinion of the Court shows that "after the depositions of several witnesses had been taken, an application was made" to the Orphans' Court to direct a plenary proceeding by libel and answer on oath, and to call a jury of twelve freeholders to their assistance for the purpose of trying an issue." The Court of Appeals held that the Orphans' Court was right in refusing that prayer because the Act of 1798, chapter 101, had repealed the Act of 1777, which provided for that method, but that the Court should have directed a plenary proceeding and issues to a Court of law under the Act of 1798. The provisions of the Act of 1798, chapter 101, sub-chapter 15, sections 16 and 17, have in substance been adopted in sections 253 and 254 of Article 93 of the Code, but after parties have elected to try, and are actually trying, the identical facts that are embraced in the issues proposed, the Court is not required to send such issues to a Court of law. Every item included in

these issues was embraced in the objections filed by the appellants, which were then being tried.   At least some of them are not proper subjects for issues.   For example, one was, " Are said administrators entitled to an allowance for the sum of $147.00 for funeral expenses paid Henry Tarring, or any part thereof, and if so, for what sum." Section 5 of Article 93 of the Code expressly provides for "funeral expenses to be allowed at the discretion of the Court according to the condition and circumstances of the deceased, not to exceed three hundred dollars."  It is for the Orphans' Court and not a jury to determine whether such an allowance should be made.   Another issue framed was whether the administrators are entitled to an allowance for the sum of $50.00 for attorneys' fees paid by them, or any part thereof.   We decided in *Miller* v. *Gehr*, 91 Md. 717, that such question is not a proper subject for issues, as the Orphans' Court must determine it, subject to the right of appeal to this Court as to the reasonableness of the allowance.   Some of the other proposed issues are to say the least questionable, but without extending that inquiry further, we are of the opinion that the statute does not require the Orphans' Court to stop the investigations being made before it, as these were, and send to a Court of law issues for the determination of such questions as those proposed in this petition, when that investigation is being made under a plenary proceeding, and the parties had elected to try the questions before the Court.   There may be cases under caveats to wills and possibly some other plenary proceedings, in which it may be proper, but when that Court is actually engaged in the hearing of the question whether administrators are entitled to be allowed for such items as these, it might lead to dangerous practices if either party has the right to stop all proceedings in that Court and require issues to be sent to a Court of law.   If the petitioners had such right, then under the statute administrators would have, which might not only result in delay and useless expense, but might enable dishonest administrators to avoid proper investigations of their administration of estates by imposing

such expenses on those seeking to have them as they would be unable to meet.　If issues could be demanded when these were, then they could be at any time before final adjudication, and certainly so far as issues of the character proposed are concerned, the Legislature never could have intended to have given the privilege to the parties to demand that they be sent to a Court of law when the Orphans' Court was actually engaged in hearing the very questions proposed to be submitted.　The order of June 25th, 1903, will be affirmed, and we will direct that each side pay one-half of the costs.

> *Orders passed June 11th, 1903, and June 25th, 1903, affirmed, each party to pay one-half of the costs in both appeals.*