## BENJAMIN FLAKS, Executor, *v.* ROSE FLAKS, Executor

[No. 65, October Term, 1937.]

*Decided January 12th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edward L. Ward* and *Joseph Allen,* with whom were *Louis Mitnick* and *M. William Adelson* on the brief, for the appellants.

*Isaac Lobe Straus,* with whom was *Henry M. Siegel* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

Benjamin Flaks, the appellant, filed an amended petition in the Orphans' Court of Baltimore City, wherein he alleged that his father, Kalmen Flaks, had died December 5th, 1935, leaving a will, executed November 24th, 1935, probated December 18th, 1935; that by the said will the petitioner and Rose Flaks, the respondent, second wife and widow of Kalmen Flaks, were named as executors, each qualifying by giving separate bonds in the sum of $1,000; that the petitioner and Rose Flaks were named as legatees in the will, and that, in addition to her legacy, Kalmen Flaks had, by deed dated January 31st, 1935, caused his home at 2904 Hillsdale Avenue, in Baltimore City, to be conveyed to Rose Flaks and himself as tenants by the entireties, the same being a leasehold subject to an annual ground rent of $85, but otherwise free; that by an antenuptial agreement dated March 30th, 1927, Rose Flaks was entitled to receive out of the estate of Kalmen Flaks the sum of $10,000 in lieu of dower; that on August 3rd, 1935, Kalmen and Rose Flaks left for a trip to Palestine; that aboard ship he became seriously ill, but continued the trip, all of the time being under medical care; that on October 31st, 1935, they arrived in New York, he, gravely ill, was taken directly from the boat to the train bound for Baltimore, thence to his home, where he was confined to bed; that on November 22nd, 1935, he was taken to the Sinai Hospital in Baltimore, where, his condition becoming hopeless, on his insistence he was taken home on December 2nd, 1935, where he died seven days later, on December 9th, 1935; that throughout his last illness Kalmen Flaks was unable to attend to his business affairs and entirely dependent upon others, and "designated his wife, Rose Flaks, as his agent to attend to the financial details of paying his medical, nursing and household bills"; and "that under the pretense that it was necessary for her to draw money from his bank accounts with which to meet said bills, which were only of nominal amounts, the said Rose Flaks, in violation of the trust reposed in her by the deceased

as his agent, did by fraud, misrepresentations, deceit and undue influence, procure the said Kalmen Flaks to sign his name" to three undated and unwitnessed orders on two savings accounts, one of the orders being on the Eutaw Savings Bank of Baltimore, from which $5,041.67, which was the entire amount of his deposit in that bank, was withdrawn November 6th, 1935, and two for $10,000 each on the Savings Bank of Baltimore, in which it developed that his deposit was $18,694, so that only the money on one of the two orders on that bank could be withdrawn, which was done by Rose Flaks on November 25th, 1935, and she still has in her possession the other uncashed order on the Savings Bank of Baltimore.

The petitioner further alleges that he is prepared to file an inventory as one of the coexecutors of his father's estate, and has demanded that Rose Flaks enter and return the said sum of $15,041.67, the amount of the two orders cashed by her, as an asset of the estate, and to deposit the same in their joint names in some bank in Baltimore, all of which she refuses to do.

The petitioner then prays that the letters testamentary granted Rose Flaks be revoked; that she be ordered to deliver the said sum of $15,041.67 to the petitioner as remaining executor; for general relief; and that a citation issue to the said Rose Flaks to appear in the Orphans' Court, and answer the premises under oath.

The respondent, Rose Flaks, filed an answer wherein she vigorously denied the charges of fraud, misrepresentation, and undue influence so made against her, and contended that, of the deposit in the Eutaw Savings Bank, $3,000 was hers, and that the remaining $12,041.67 was a free and voluntary gift from her husband, Kalmen Flaks, to her, but that the uncashed order for $10,000, on the Savings Bank of Baltimore "had not been used by her, apparently due to the fact that such an amount was not to the credit of said deceased in said bank," and she is therefore not guilty of misconduct in respect to the administration of her husband's estate, and her letters testamentary not subject to revocation.

The petitioner Benjamin Flaks then prayed that issues be sent to a court of law for trial by a jury substantially as follows: (1) Whether Rose Flaks by misrepresentation, deceit, or fraud practiced upon the decedent, Kalmen Flaks, prior to his death obtained and converted to her own use $5,041.67 on deposit in his name in the Eutaw Savings Bank; (2) whether she had by undue influence obtained and converted the same to her own use; (3) whether she had by misrepresentation, deceit, or fraud so practiced obtained and converted to her own use $2,041.67 of the Eutaw Savings Bank deposit; (4) whether she had obtained $2,041.67 by undue influence; (5) whether, by misrepresentation, deceit, or fraud, she so obtained and converted to her use $10,000 from the Savings Bank of Baltimore; and (6) whether she had obtained it by undue influence, and converted it to her own use.

The respondent Rose Flaks answered that the matters set up by the petitioner are solely and exclusively within the jurisdiction of the Orphans' Court, that such issues cannot be lawfully transmitted to a court of law, and that the issues submitted are bad and illegal in form and substance.

After a hearing on the petition for issues and the answer thereto, two of the three judges of the Orphans' Court dismissed the petition on the ground, "(1) that the issues submitted are faulty, and (2) that issues are not properly grantable on the amended petition and answer thereto upon which said petition of May 14th is based." The other judge dissented from the view of the majority, that the petitioner was not entitled to issues, but agreed with the result because he thought the issues proposed were improper. From the order dismissing the petition of May 14th, 1937, the petitioner appeals.

This court agrees with the dissenting judge that the petitioner is entitled to issues, but disagrees with all of them that the issues submitted by the petitioner do not clearly and simply present the questions involved. The dissenting judge, in his exhaustive opinion, said, in con-

clusion, that "The questions of fact as raised by the answer in this case is whether the money in controversy was given by the decedent to the respondent part in payment of a debt and the balance as a gift." The petitioner charged his coexecutor, the respondent, with wrongfully withholding and converting to her use two items of cash belonging to the estate of Kalmen Flaks, one, a deposit of $5,041.67 in the Eutaw Savings Bank, and the other a deposit of $10,000 in the Savings Bank of Baltimore. Of the Eutaw Savings Bank account the respondent claimed, in her answer, that "the sum of three thousand ($3,000.00) dollars was due and owing from the said Kalmen Flaks to this respondent, and the remaining part, to-wit, two thousand forty-one dollars and sixty-seven cents ($2,041.67) of said sum on deposit was an absolute and unqualified gift upon the part of the said Kalmen Flaks to your respondent." The answer admits the possession of both deposits, but alleges that they were separate "gifts." So that the question raised by the answer is not whether the decedent made her a gift of $15,041.67, or $12,041.67 and paid a debt of $3,000. The issues should be so framed that the jury can give a single answer to each question submitted to them, and to each of those proposed this can be done. *Hamill v. Hamill*, 162 Md. 159, 168, 159 A. 247; *Simmons v. Hagner*, 140 Md. 248, 251, 117 A. 759; *Ward v. Poor*, 94 Md. 133, 142, 50 A. 572.

The petition in this case was filed under the authority of section 255, article 93 of the Code of Public General Laws 1924, which reads: "Whenever any joint administrator or executor shall apprehend that he is likely to suffer by the negligence or misconduct in the administration, improper use, or misapplication of the assets of the estate by any executor or administrator, he shall make complaint to the orphans' court, and if the same shall be adjudged well founded, the court shall have authority, in their discretion, to revoke the powers and authority of the executor or administrator so complained of, and to enforce by attachment and commitment, if necessary,

the surrender and delivery to the remaining executor or administrator of the assets, and of all book accounts and evidences of debt of the estate that may be in the possession or control of the person so dismissed from the administration, and the remaining executors or administrators shall have remedy by an action on the case for the recovery of any loss or damage they may be subject to or suffer by the executor or administrator whose powers shall have been revoked as aforesaid." And no other action can be taken, for recovery of property of the estate, by one executor or administrator against his coexecutor or coadministrator, so long as the letters of the one complained of remain unrevoked. *Beall v. Hilliary,* 1 Md. 186, 197; *Hesson v. Hesson,* 14 Md. 8, 14.

The respondent's contention is that, under this section 255, the authority and power of the orphans' court to hear and determine the question of the removal of a coexecutor, and everything pertaining to it, is exclusive, and no other court has any power in the premises. She is right on the main question, the right to remove a coexecutor, because no other court has this power, but, when she admits, as all must, that the orphans' court has jurisdiction to remove a coexecutor, it follows that, when the proceedings to that end become plenary, the right to issues arises. *Fowler v. Brady,* 110 Md. 204, 209, 73 A. 15. "The test of plenary proceedings is whether a petition or bill is filed, and the parties against whom it is filed appear and answer." *Cannon v. Crook,* 32 Md. 482, 484; *Stonesifer v. Shriver,* 100 Md. 24, 28, 59 A. 139. According to the decisions in these cases, this proceeding is plenary.

The petitioner contends that, the proceedings having become plenary, he has the right to issues under sections 263 and 264 of article 93 of the Code. These sections provide (263) that "The orphans' court may, in all cases of controversy therein, upon the application of either party, direct plenary proceedings by bill or petition, to which there shall be an answer on oath," and (264) "On such plenary proceeding, all the depositions shall be taken

in writing and recorded, and, if either party require it, the court shall direct an issue or issues to be made up and sent to any court of law convenient for trying the same." The respondent's contention is that these sections have no application to or connection with section 255, under which the petition was filed, not only because the jurisdiction of the orphans' court is exclusive, but because there is no provision in that section for issues, and none in sections 263 and 264 referring to it. That is not the view of this court. In our opinion sections 263 and 264 are of general application, and apply "in all cases of controversy" within the jurisdiction of the orphans' courts for which special provision has not been otherwise made. In the case of *Anderson v. Curran*, 155 Md. 538, 142 A. 719, an administratrix had been removed by the orphans' court, and successors appointed; she was required under section 256 of article 93 of the Code to account "up to the period of the rendition of such account"; one of the new administrators filed a bill in equity to compel an accounting, etc. This court there held, though there was no provision for it in section 256, that it was a proper case for issues under sections 263 and 264. Other cases to which sections 263 and 264 were held to apply, though no special provision had been made in the statute invoked, were *Redman v. Chance*, 32 Md. 42; *Bell v. Funk*, 75 Md. 368, 23 A. 958; *Richardson v. Smith*, 80 Md. 89, 30 A. 568; *Slay v. Beck*, 107 Md. 357, 68 A. 573; *Stanley v. Safe Deposit & Trust Co.*, 87 Md. 450, 40 A. 53. The case of *Pearre v. Grossnickle*, 139 Md. 274, 115 A. 49, was a controversy, similar to the one here presented, between executors, in which the question of the jurisdiction and power of the orphans' court was not raised, but the procedure followed in that case was what we say is proper here. The duty of the orphans' court to make up and transmit issues to a court of law, when required, is imperative, and it is also bound to accept the conclusions of the jury as final, and to make them effective by proper orders or decrees. *Price v. Taylor*, 21 Md. 356, 363; *Taylor v. Nuttle*, 62 Md. 342, 344; *Pleasants v. McKenney*, 109 Md. 277, 292, 71 A. 955.

Issues being sent to and decided by a court of law is not an interference with either the power or jurisdiction of the orphans' court; no other court can decide whether the letters of an executor or administrator may be revoked. "The finding of the jury is intended as an aid to the orphans' court in the exercise of the jurisdiction conferred upon it; * * * it is its final order, and not the finding of the jury, that determines the case." *Fowler v. Brady,* 110 Md. 204, 209, 73 A. 15, 17; *Holland v. Enright,* 167 Md. 604, 607, 175 A. 466. Following the answers of a jury to issues, the order of the orphans' court removing or failing to remove an executor or administrator is appealable. *Baldwin v. Hopkins,* 172 Md. 219, 191 A. 565; *Fulford v. Fulford,* 153 Md. 81, 92, 137 A. 487; *Macgill v. McEvoy,* 85 Md. 286, 37 A. 218.

This court being of the opinion that the petitioner is entitled to issues, and that those proposed properly present the questions of fact necessary to a decision by the Orphans' Court, the order appealed from will be reversed and the case remanded.

*Order reversed, and case remanded for an order directing the issues to be sent to a court of law, with costs.*