952 A.2d 1013

**Marquitta Jo RUSSELL, Appellant,**

**v.**

**Jennifer F. GAITHER, Personal Representative of the Estate of Vinnie R. Henderson, Appellee.**

**No. 01344, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

July 7, 2008.

Thomas J. Gisriel (Hodes, Pessin & Katz, PA on the brief), Towson, for Appellant.

Stephen H. Sacks (Steven E. Silberg, Silberg & Silberg on the brief), Baltimore, for Appellee.

Panel: DEBORAH S. EYLER, ZARNOCH, WRIGHT, JJ.

ZARNOCH, Judge.

In this case, we are asked to determine whether the orphans' court or the circuit court is the proper forum for the determination of factual issues in appellant's caveat proceeding. For the reasons set forth below, we conclude that the Orphans' Court for Baltimore City erred in rejecting as untimely the appellant's Petition to Transmit Issues to the Circuit Court.

## FACTS AND PROCEEDINGS

The relevant facts in this case are not in dispute. On January 2, 2006, Vinnie R. Henderson of Baltimore City died leaving two wills. A March 23, 2005 will named appellant Juanita Russell personal representative and left the decedent's home and automobile to her niece, Marquitta J. Russell, and the residue of her estate to her and Henderson's other nieces, Tina R. Brown, Renee K. Sample, and Serrena D. Russell. A July 12, 2005 will named appellee Jennifer Gaither personal representative, made a series of specific bequests, and left Henderson's entire residuary estate to Nathaniel Jacobs.

On February 3, 2006, Gaither filed with the Register of Wills for Baltimore City a petition for probate based on the July 12, 2005 will, which was admitted to administrative probate. Nearly six months later, on July 26th, Marquitta Russell ("Russell") filed a Petition to Caveat in the orphans' court, seeking to have the July 12, 2005 will invalidated and the March 23, 2005 will admitted to probate. The petition alleged various reasons for the invalidation of the later will, including lack of capacity, undue influence, and fraud. These allegations were denied in an August 29, 2006 Answer to Petition to Caveat filed by Gaither.

On January 18, 2007, the orphans' court entered a Pre–Trial Order, which, among other things, required that all pre-trial motions, including requests for transmittal of issues, be filed no later than April 16, 2007. Seven weeks after this deadline, on June 4th, Russell petitioned to transfer issues in

the caveat proceeding to the circuit court.[1]  The petition was opposed by Gaither as untimely because it was not filed "within the time determined by the [orphans'] court" under Md.Code (1974, 2001 Repl.Vol.), § 2–105(b) of the Estates & Trusts (ET) Article.  On July 26, 2007, the orphans' court dismissed Russell's petition "as not timely filed in accordance with this Court's order dated January 18, 2007."  This appeal followed.[2]

## DISCUSSION

Both parties in this case rely on subsection (b) of § 2–105 of the Estates and Trusts Article.  Section 2–105, which has not been amended since the revised Article was enacted in Chapter 11 of the Laws of 1974, provides that:

(a) In a controversy in the court, an issue of fact may be determined by the court.

(b) At the request of an interested person made within the time determined by the court, the issue of fact may be determined by a court of law.  When the request is made before the court has determined the issue of fact, the court shall transmit the issue to a court of law.

(c) After the determination of the issue, whether by the court or after transmission to a court of law, the court shall enter an appropriate judgment or decree.

(d) This section does not apply where the estate is administered under the jurisdiction of a court having general equity jurisdiction.

Appellee steers our focus to the first sentence of § 2–105(b), arguing that the orphans' court has the statutory authority to determine "the time" when a request to transmit issues to the circuit court may be made, that it has done so here in its pre-

---

1.  Russell was by then represented by new counsel.

2.  There is no doubt that an order refusing to transmit issues is an appealable final judgment.  *Nugent v. Wright,* 277 Md. 614, 616, 356 A.2d 548 (1976); *Banashak v. Wittstadt,* 167 Md.App. 627, 688, 893 A.2d 1236 (2006).

trial order, and that Russell's petition failed to meet that deadline. On the other hand, appellant relies on the second sentence of § 2–105(b), contending that because the orphans' court has not yet "determined" the factual issues sought to be transmitted to the circuit court, her petition is timely.[3]

Both sides attempt to harmonize these apparently conflicting provisions. The appellee posits this theory:

> The first sentence clearly states in what time period the transmittal is allowed, *i.e.*, within the time determined by the (orphans') court. The second sentence clearly addresses what shall be transmitted, *i.e.*, all issues of fact not previously determined.

Gaither also notes that a contrary construction would result in an unreasonable result, where a party facing apparent defeat in the orphans' court could successfully transmit issues at final argument. The appellant would harmonize the provisions in this fashion:

> The second sentence establishes that the Orphans' Court lacks authority to require a motion for transmission of issues be made before determination of the issue by the Orphans' Court. Under the first sentence, however, the Orphans' Court retains some authority to allow a petition for transmission of issues after the court has determined the issue of fact so long as the request is made "within the time determined by the court."

To resolve these conflicting views as to the meaning of the statute and to clarify the apparent ambiguity of the two sentences in § 2–105(b), an examination of the legislative history is in order.

The second sentence traces its lineage to 1777, *see* Chapter 8, Laws of 1777 (Feb. Sess.), and has been interpreted or applied numerous times by Maryland appellate courts. *See, e.g., Banashak v. Wittstadt, supra,* 167 Md.App. at 679–688,

---

3. Neither party asserts that Maryland Rule 6–434, which governs the procedures for transmitting issues, has any bearing here on the proper construction of § 2–105.

**30**

893 A.2d 1236; *Hill v. Lewis*, 21 Md.App. 121, 126–27, 318 A.2d 850 (1974)(collecting cases).[4] These cases have frequently emphasized the mandatory nature of the orphans' court's duty to transmit issues at the insistence of a party. *See, e.g., Ades v. Norins*, 204 Md. 267, 272, 103 A.2d 842 (1954)(Upon the request of either party, the orphans' court is "required" to frame issues and send them to a court of law for trial); *Flaks v. Flaks*, 173 Md. 358, 365, 196 A. 116 (1938)(Duty to transmit issues "is imperative"); *Schmidt v. Johnston*, 154 Md. 125, 133, 140 A. 87 (1928)(It is the "imperative duty" of orphans' court to send issues to a law court). In addition, at least in caveat proceedings, Court of Appeals cases have said that a party may request that issues be transmitted to the circuit court at any stage of the proceeding before final adjudication. *Humes v. Shillington*, 22 Md. 346, 358 (1864); *Pegg v. Warford*, 4 Md. 385, 393–94 (1853); *Barroll v. Reading*, 5 H & J 175, 176 (1821). In *Barroll, supra*, 5 H & J at 176, Judge Buchanan explained the rationale for this rule:

> The regular mode of proceeding in opposition to the admission of a will to probate is by a *caveat;* and it may often happen, (and probably most frequently does happen) that the necessity for a plenary proceeding and a trial by jury is only discovered after a part, at least, of the testimony is taken; and at any stage of the proceedings, before final adjudication, either party may require it, and the court is not at liberty to refuse it.

It was not until the 20th Century that the Court of Appeals placed some limits on the timing of a request to transmit issues to the circuit court. In *Maynadier v. Armstrong*, 98 Md. 175, 56 A. 357 (1903), in a case involving a dispute over payments from an administrator's distribution account, the

---

**4.** The 1777 legislation authorized an orphans' court to direct any issue to be tried by plenary proceeding and to call a jury of 12 freeholders of the county to assist in the determination of the issue. The law was revised in 1798 to provide that "in case either party shall require, the court shall direct an issue or issues to be made up, and sent to any court of law which may be most convenient, under all circumstances for trying the same...." Chapter 101, Laws of 1798 at § 17.

orphans' court refused to halt a trial in order to transfer issues to the circuit court. The Court of Appeals affirmed, noting, *id.* at 179, 56 A. 357:

> There can be no valid reason after a plenary proceeding has been commenced, in a case such as this, why the parties cannot determine before beginning the testimony thereunder whether they want a jury, which is the object of having issues sent to a Court of law. No case has been cited and we recall none in this State in which, after testimony has been begun before the Court under plenary proceedings, the same questions then being inquired into have been withdrawn from the consideration of the Orphans' Court, and issues sent to a Court of law.

Distinguishing *Barroll* as a caveat case, the *Maynadier* Court said:

> [W]e are of the opinion that the [statutory predecessor of the second sentence of § 2–105(b) ] does not require the Orphans' Court to stop the investigations being made before it, as these were, and send to a Court of law issues for the determination of such questions as those proposed in this petition, when that investigation is being made under a plenary proceeding, and the parties had elected to try the questions before the Court. There *may be cases under caveats to wills and possibly some other plenary proceedings, in which it may be proper,* but when that Court is actually engaged in the hearing of the question whether administrators are entitled to be allowed for such items as these, it might lead to dangerous practices if either party has the right to stop all proceedings in that Court and require issues to be sent to a Court of law. If the petitioners had such right, then, under the statute, administrators would have, which might not only result in delay and useless expense, but might enable dishonest administrators to avoid proper investigations of their administration of estates by imposing such expenses on those seeking to have them as they would be unable to meet. If issues could be demanded when these were, then they could be at any time before final adjudication, and certainly so far as issues of the character

proposed are concerned, the Legislature never could have intended to have given the privilege to the parties to demand that they be sent to a Court of law when the Orphans' Court was actually engaged in hearing the very questions proposed to be submitted.

*Id.* at 180–81, 56 A. 357. (Emphasis added).

Unlike the second sentence of § 2–105(b) of the ET Article, the key language in the first sentence ("within the time determined by the court") is of comparatively recent origin. It is the 1969 product of the substantive and non-substantive revision of Maryland's estates and trusts laws drafted between 1965 and 1968 by the Governor's Commission to Review and Revise the Testamentary Law of Maryland ("the Henderson Commission").[5] *See* Chapter 3, Laws of 1969.[6] The December 5, 1968 Report of the Henderson Commission contained the following "[c]omment" on the change: "This Section is intended to continue the present practice now set forth in

---

5. Not only has the product of the Henderson Commission been described as "the most significant statutory reform to have been originated in Maryland" in the 20th Century, Stiller & Redden, *Statutory Reform in the Administration of Estates of Maryland Decedents, Minors and Incompetents*, 29 Md. L.Rev. 85 (1969), this revision gave birth to the State's now nearly four decades old code revision process. Because of his substantial contributions to the Henderson Commission, the 1974 revision of the Estates and Trusts Article, and code revision in general, this year the General Assembly took the unprecedented step of dedicating the Estates and Trusts Article to the late Roger D. Redden, the renowned attorney with the law firm of DLA Piper (formerly Piper & Marbury). *See* Chapter 538, Laws of 2008.

6. As enacted in Chapter 3, § 2–105 of Article 93 provided:

In any controversy in the Court, issues of fact may be determined by the Court or, at the request of any interested person made within such time as may be determined by the Court, by a court of law. Where such request is made before the Court has determined the issue of fact, the Court shall transmit the issues to a court of law. After the determination of the issue, whether by the Court or after transmission to a court of law, the Court shall enter an appropriate judgment or decree. This Section shall not apply where the estate is administered under the jurisdiction of a court having general equity jurisdiction.

In the 1974 ET revision, this language was amended without substantive change into its present form.

§§ 272, 278, 280 and 281(Md.). *See Sykes,* §§ 221–229. No substantive changes are intended." [7] *See also* Stiller & Redden, *supra,* 29 Md. L.Rev. at 90 ("No major changes have been made in the present statutory procedures and powers of the Orphans' Courts . . .").

The source law for the first two sentences of § 2–105, Md.Code (1957, 1964 Repl.Vol.), Article 93, § 278 and § 280, does not contain the terms "within such time as may be determined by the Court." [8] A more likely source is language found in P. Sykes, *Probate Law & Practice* (1956) at § 221 and referenced in the § 2–105 comment in the Henderson Commission Report: "In proper cases, *provided the request is made in time,* the duty of the Orphans' Court to make up and transmit issues to a court of law is imperative." (Emphasis added). Section 221 of Sykes, distilling Maryland cases like *Barroll and Maynadier,* goes on to note that:

> *Except in caveat cases,* after the parties have elected to try, and are actually trying the identical facts embraced in the proposed issues, the Court is not required to stop the hearing and send them. Nor can the Court be asked to transmit issues after it has passed an order on the merits of the controversy.

(Emphasis added).

This is what Sykes likely meant by "provided the request is made in time" and what we believe the Henderson Commission and the 1969 General Assembly intended in the

---

7. The comments of the Henderson Commission on each provision drafted were not contained in Chapter 3 of the Laws of 1969. However, they were included, along with the revisor's notes, in the published version of the 1974 non-substantive code revision of the ET Article.

8. Section 278 provided in relevant part that "[t]he orphans' court may, in all cases of controversy thereon, upon the application of either party, direct plenary proceedings...." Section 280 stated that "[o]n such plenary proceeding, all the depositions shall be taken in writing and recorded, and, if either party require it, the court shall direct an issue or issues to be made up and sent to any court of law convenient for trying the same, and the issues shall be tried in the said court of law as soon as convenient, without any continuance longer than may be necessary to procure the attendance of witnesses...."

§ 2–105(b) reference to "made within the time determined by the court." In short, the new provision embraced existing caselaw distinctions rather than abrogated them. Gaither thus has failed to overcome two roadblocks to her reading of the 1969 change to § 2–105: 1) that a nonsubstantive codification, as intended in these provisions, ordinarily works no change in existing law; and 2) the presumption that a change in the law does not abrogate pre-existing caselaw. *See Allen v. State,* 402 Md. 59, 71–72, 935 A.2d 421 (2007).

Post–1969 cases and commentary support this conclusion. *See Nugent v. Wright, supra,* 277 Md. at 619, 356 A.2d 548 (quoting from the Henderson Commission Report that the "prior law of Maryland" on caveat proceedings "will continue to apply"); *Hill v. Lewis, supra,* 21 Md.App. at 127, 318 A.2d 850 (describing the "state of much of the law with respect to issues submitted by an orphans' court to a court of law" as "settled"); *Banashak v. Wittstadt, supra,* 167 Md.App. at 687–88, 893 A.2d 1236 (describing *Barroll* as a "fountainhead decision" and emphasizing its conclusion that an orphans' court was not free to refuse to transmit issues to the circuit court). Legal commentary on § 2–105 emphasizes the right of a party to transmit factual issues before the orphans' court has determined the issue, without mentioning any authority of the court to curtail that right. *See Gibber, Estate Administration* (5th Ed.1983, 2008) at § 2.99; *Lyon, Will Contests & Related Litigation* (MICPEL 2002) at D.10.[9]

Appellee contends that it could not have been the intent of the General Assembly to permit late-blooming forum-shifting, particularly at the insistence of a party facing possible defeat in the orphans' court. The Court of Appeals, however, addressed this possibility in *Maynadier v. Armstrong, supra,*

---

9. *Lyon* also notes *id.* at D–11:

Section 2–105 is critical and directly applicable to the caveat of a will since both the caveator and the caveatee frequently wish for a law court (Circuit Court) to determine issues and in many instances for a jury to determine the issues. For both tactical and other reasons, a caveator or caveatee will usually request a transmission of issues to a law Court.

where it said the orphans' court was authorized to decline to transmit issues in certain cases, but not in caveat proceedings, where the need for a right to transmit could be the greatest. 98 Md. at 179–81, 56 A. 357. *See* n. 9, *supra*.[10] If this means that the second sentence of § 2–105(b) is in the nature of a proviso to the first sentence, it is nevertheless the intention of the General Assembly and serves a plausible, if not reasonable, purpose.

■ This is a caveat case where the rules for transmitting issues are governed by *Barroll*.[11] Even if Russell, by not objecting to the pre-trial order, could be deemed to have "agreed" to a plenary proceeding exclusively in the orphans' court, *Maynadier, supra*, 98 Md. at 179–81, 56 A. 357, no testimony had been taken, no final adjudication had occurred, and the request to transmit was made "before the [orphans'] court [had] determined the issue of fact" within the meaning of § 2–105(b) of the ET Article.[12]

Because Russell's right to transmit issues to the circuit court was erroneously denied as untimely, we shall reverse and remand for further proceedings in the orphans' court. If the orphans' court determines that the issues meet the relevant standards, the issues should be appropriately framed and forwarded to the circuit court for decision.[13]

---

10. Of course, a party's motive in seeking to transmit issues to the circuit court is irrelevant to the question of his or her statutory right to take such action. *Garner v. Garner*, 167 Md. 423, 428, 173 A. 386 (1934).

11. It is also a "plenary proceeding" in that Gaither's answer denies key allegations of Russell's Petition to Caveat. *See Flaks v. Flaks*, 173 Md. 358, 364, 196 A. 116 (1938).

12. Because this is a caveat proceeding and the result is so clearly dictated by applicable caselaw, there is no need to determine the interaction of the two sentences of § 2–105(b) in other types of cases.

13. Before each issue may be transmitted, it must meet the following tests: 1) Does the orphans' court have jurisdiction of the subject?, 2) Is the question properly before the orphans' court?, and 3) Is the issue relevant and material to the question before the orphans' court? *See Myers v. Hart*, 248 Md. 443, 447, 237 A.2d 41 (1968).

**36**

JUDGMENT OF THE ORPHANS' COURT OF BALTI-
MORE CITY REVERSED.  CASE REMANDED FOR
FURTHER PROCEEDINGS NOT INCONSISTENT WITH
THIS OPINION.  COSTS TO BE PAID BY APPELLEE.