## WILLIAM W. BOYCE ET AL. vs. CATHERINE B. McLEOD ET AL.

*Application for Payment of Costs of Appeal out of Fund to be Distributed to Appellant—Appeals by Different Parties From Same Decree—Costs—Appeal by Trustee.*

Under a bill for the administration of the estate of a decedent in accordance with the terms of his will, a decree was passed directing the sale of the real estate for the payment of legacies and charging certain legatees with sums of money adjudged to have been advanced to them by the testator. One of the legatees who appealed from this decree was not entitled to any part of the fund then in the hands of the executors, and whether he would ever become entitled to anything depended upon the price for which the real estate might be sold. This legatee alleged his inability to pay the costs of the appeal and asked that the same be advanced by the executor out of the funds of the estate to constitute a lien on his distributive share. *Held*, that under these circumstances, the costs of his appeal ahould not be paid by the executor out of the funds in which the petitioner had no present interest.

A decree was passed in an equity cause adjudging that certain legatees of the estate there being administered, should be charged with certain sums as advancements made to them by the testator. One of the legatees appealed from that part of the decree relating to the charge against him, and other legatees appealed from the whole decree. The record on appeal, as made for the first appellant, contained the matter relating to that part of the decree he appealed from; and the other appellants then asked for a writ of diminution to have included in the record the evidence relating to their appeals. *Held*, that the appellants in the first appeal cannot be required to pay the costs of the additional record not relating to his appeal.

When the same decree affects the rights of parties who have conflicting interests and they appeal from the decree so far as it relates to their respective interests, the amount of the costs of the appeal for which each party is liable should be ascertained by the Clerks of the Court of Appeals and of the lower Court, in case the parties do not agree. But if one of the appellants fails to pay his share of the costs, another appellant cannot be required to pay the cost of transmitting the entire record, including those parts not relating to his interests.

Whan a trustee appointed by a will is also a beneficiary under it, he is en-

titled to appeal in his individual capacity from a decree injuriously affecting his personal interest and operating to the benefit of his *cestui que trust.*

*Decided November 13th, 1907.*

Appeal from the Circuit Court of Baltimore City (ELLIOTT, J.).

The cause was argued before BOYD, C. J., SCHMUCKER, BURKE and ROGERS, JJ.

*Edgar H. Gans* and *Vernon Cook*, for the appellants.

*J. Bannister Hall* and *Clifton Doll Benson* (with whom was *Thomas Hughes* on the brief), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This appeal was taken by William W. Boyce, individually and as one of the executors of James Boyce, deceased, and by John A. Boyce and John Albert Boyce, Jr., from an order passed by the Circuit Court of Baltimore City, directing that the costs of the appeal (including preparation of the transcript and printing of the record and briefs) of Mrs. McLeod, Mrs. Stopford, Mrs. Post and others, which are Nos. 60 and 62 on the Court Docket of the present term of this Court "be advanced out of the funds of this estate, said advance to constitute a first lien on the distributive shares of the said parties in this estate in the hands of the executors, and that the said executors be and they are hereby authorized and directed to pay the costs accordingly, it being the purpose of this order to provide for the payment of such costs as the petitioners are obliged to pay to secure the hearing and decision of their appeal in this case."

The petition was filed in a case in that Court entitled *William A. Fisher et al., Executors of James Boyce,* v. *The Kelso Home of the Methodist Episcopal Church et al.,* in which a bill was filed for the construction of the will of James Boyce, deceased, and asking the Court to take jurisdiction of the various functions, duties and trusts devolved upon the executors, and

to empower and direct them to administer the entire estate, real and personal, under the supervision and direction of that Court. That bill was filed January 8th, 1892, and on February 13th, 1906, a supplemental bill was filed by William W. Boyce and D. K. Este Fisher, as executors (the latter having been appointed by William A. Fisher under a provision of the will of James Boyce) which made new defendants and added several prayers. On March 22nd, 1907, a decree was passed which contained six paragraphs. The first directed William W. Boyce and D. K. Este Fisher, executors, to pay four legacies of $5,000 each, with interest from September 16th, 1895, out of the funds now in their hands or thereafter realized from sales of real estate; the second directed them to pay a legacy of $2,000 to William W. Boyce, trustee for Samuel W. B. Hiss, with interest from August 16th, 1892; the third decreed that it was the intention of the testator that the executors should sell all his real estate for the purpose of applying the proceeds, together with his personal property, to the payment of his debts, funeral expenses and costs of administration, legacies and collateral inheritance tax, and to make division of the residue of his estate. It also directed the executors to sell the remaining real estate. The other paragraphs of the decree disposed of several matters, including the amounts to be charged to the children of the testator under the provisions of his will. John A. Boyce entered an appeal from paragraphs one, two and three of the decree (No. 59 on this Docket), Mrs. McLeod, Mrs. Stopford and certain remaindermen entered an appeal from the whole decree (which is No. 60), as did William W. Boyce and John Albert Boyce, Jr. (which is No. 61) and Mary E. Post, Mabel Post Reid and Mabel Reid (which is No. 62).

By the decree Mrs. McLeod is charged with $23,511.39, Mrs. Stopford with $8,504.16, Mrs. Post with $4,128.64, William W. Boyce with $2,547.99, John Boyce with $351.71 and James Boyce, Jr., with $91,606.27 as amounts advanced to them and chargeable under the provisions of the will to their respective distributive shares. The executors have in

hand about $65,000, and there remain unsold 205 acres of land. The legacies with interest amount to about $38,000 and the expenses of the administration are estimated at $5,000. There have also been advances to the children of the testator of income, amounting to $8,500. It is manifest that if this Court affirms the decree, Mrs. McLeod will get nothing out of the money now in hand, and whether she will be entitled to any thing must depend upon what is realized from the real estate. The appellants in this case contend that she will get nothing, while she claims she will eventually receive at least sufficient to pay her share of the costs. But if the latter be conceded, we are not aware of any practice or precedent that would authorize us to require those whose interests are antagonistic to hers on the question of the charges, to advance money to her to enable her to prosecute her appeal, and yet that is what the order is equivalent to. The real estate has been in the hands of the executors and their predecessors for over sixteen years, and the evidence shows that they have made all reasonable efforts to sell it but still have on hand about one-half of that left by the testator. The order directs the costs to be "advanced out of the funds of this estate," which must mean the funds in hand, as the costs were required to be paid within the time allowed to prosecute the appeal, and as the case now stands Mrs. McLeod has not one dollar's interest in the fund. If she ever has any it may be one, two or more years before it can be recovered. At best then, there may be nothing for the lien provided for by the decree to attach to for sometime to come, so far as her share is concerned, and it is at least questionable whether she will ever be entitled to anything.

The order also includes Mrs. Post and therefore according to its terms the amount to be advanced is to constitute a lien on her distributive share, but she is not only not a party to the petition but the only evidence on the subject in the record shows that she is opposed to this proceeding. It is true that Mrs. Post is not now before us objecting to the order, but as she is not a party to the proceeding we do not understand

upon what principle her distributive share could be made liable under this order, and therefore the appellants could not have the protection of that share. As she is not pecuniarily interested in reducing the amount charged against Mrs. McLeod, it is not probable that she would be willing to subject her share to the risk of being responsible for the costs in those appeals. Nor do we understand that Mrs. Stopford intended by her application to make her share responsible for the whole cost. The petition shows that it was intended that the cost of the appeal should be "assessed to their respective shares," and that is as far as the Court could be asked to go, even if the theory of the petitioners be adopted. It is impossible for the Court now to know who will ultimately be entitled to the *corpus* of these three shares, for the will provides that the trustees shall pay over the net income of the respective shares to the daughters during their lives, "and from and after the death of each of my said daughters to hold the whole *corpus* of the share, the income on which was payable to her, to the use of her children and descendants," and in case of the death of any of them "without issue living at her death," then to the use of the other children of the testator and their descendants. So if Mrs. Stopford was willing to subject her share to the payment of all the costs, she could not do so for the benefit of Mrs. McLeod, even if she could for her own benefit, which, to say the least, would be doubtful under the circumstances of this case. Indeed it may well be questioned whether the clause in the will which the appellees referred to as preventing them from borrowing the necessary amount of money—that is to say "without power in them, respectively, to mortgage, assign, transfer, encumber or anticipate their interests in said share, or in said income"—would not in spirit be as much violated by *encumbering* the shares by such a proceeding as this, as by borrowing the money from some other-source and attempting to secure it through these shares. The purpose and effect would be the same, and the main difference really would be that one would be a forced and the other a voluntary loan.

If what we have already said be not sufficient to show why such order should not be passed, and if it could be permissible to give the relief sought under any circumstances, surely it would not be done without clear proof that the necessities of those desiring to appeal demanded such an unusual method of obtaining the amount required to enable them to prosecute their appeal, and when we examine the evidence in the record we find that it wholly fails to satisfactorily establish the fact. If there be merit in their claims there ought not to have been much difficulty in obtaining the necessary amount, especially if Mrs. Post and Mrs. Stopford are desirous of prosecuting their appeals. Mrs. McLeod has two sons, who are interested in the remainder of her share, both of whom have employment, and her husband keeps a small country store in Montgomery County. It is not shown that Mrs. Stopford and her children could not raise her portion, or more, and it is not attempted to prove that Mrs. Post could not. It was stated at the argument that John A. Boyce had paid for the record which is in No. 59, which has been printed and by agreement was used at the hearing of this appeal. It is therefore only necessary to provide payment for the part of the record not furnished by him. It is true that that is said to be larger than the part now in this Court, but it can scarcely be of such size as would preclude these petitioners from obtaining a transcript of it, and having it printed, unless they be much more destitute than the evidence shows them to be. The petition alleges, "That some of your petitioners are in destitute circumstances without means to provide even the necessities of life, and none of them able to pay the cost of an appeal." Although that is sworn to by Mrs. McLeod, her testimony shows the petition referred to Mrs. Stopford and when she was asked whether she meant to say Mrs. Stopford was in destitute circumstances, she replied, "I don't know whether it comes to that, but she certainly has very moderate means," and then admitted she knew nothing about the financial ability of Mrs. Stopford's children, who are parties to the petition. She was the only witness offered by the petitioners on the subject. So

if we felt justified in approving of an order such as this, pro-
vided it was clearly established that the parties were unable to
otherwise procure the amount necessary for the purpose of an
appeal, it could not be done in this case.    We can understand
the desire of the learned Judge who passed the order to aid
the parties in having their appeal heard, as he had passed the
decree, but we are of the opinion that it cannot be done, under
the circumstances of this case, in the way provided for in the
order.

We have already, by orders filed, announced our conclu-
sion in this case and also as to the application for writ of dim-
inution in No. 59, which was argued was this appeal.    We
did so in order that these appellees might have as much time
as we felt we could properly allow them to endeavor to have
the additional record transmitted and printed at their own ex-
pense.    We stated then that the appellant in No. 59 could
not be required to pay the costs of the additional record.
Rule 17 of this Court which is sec. 42 of Art. 5 of the Code
provides that, "In all cases of cross-appeals, or of more than
one appeal being entered in the same case from any judgment,
decree or order, there shall be but one transcript of the record
transmitted to the Court of Appeals, and that shall be used
upon the hearing of all such appeals.    In cases arising under
this rule, the appellate Court shall have power to award costs,
including the cost of transmitting the record, to either of the
parties in its discretion, or the costs may be apportioned as
the said Court may deem just."    The appeal in No. 60 (which
is the one taken by these petitioners) is not a cross-appeal
from that taken in No. 59, but is one taken from the same de-
cree.    The appellants in No. 60 have the same interest in the
matter appealed from in No. 59 as that appellant has.    There
was therefore no possible ground, in our opinion, upon which
John A. Boyce could be compelled to pay for the additional
record which the appellants in No. 60 deemed necessary for
the purposes of their appeal.    On the question of the amounts
to be charged against the respective shares his interests were
not only not the same, but in conflict with those of the

other appellants, and it would therefore be strange if he could be required to pay for the part of the record they desire.   As well might it be said that in case of a decree under a creditor's bill, the first creditor who took an appeal would be required to pay for the entire record, although a very small part of it related to his claim.   Indeed it would be contrary to the rules of this Court to include parts of a record which had no reference to his appeal, for he could not assume that other appeals would be prosecuted.   While it is true that the above Rule (17) provides that "there shall be but one transcript of the record transmitted to the Court of Appeals," Rule 24 provides that "if there be cross-appeals, or more than one appeal, embraced in *one* transcript, the cost shall be duly apportioned."   The correct practice, when several parties have conflicting or different interests, which are affected by the same decree, is to agree upon the respective amounts they are to pay, or if that cannot be done to have the clerks of this and the lower Court ascertain the amounts they are respectively liable for, but if one party fails to do his part the one not in default should not be made to suffer—either by subjecting him to the risk of losing his right to have the part of the decree which affects him reviewed, because he cannot pay all of the costs, or by requiring him to pay for the entire record and thereby run the risk of not recovering the additional costs, if the other party be financially irresponsible.   In cross-appeals it may be more difficult to protect an appellant, just as it sometimes is when there is only one appeal and the appellee demands more should be inserted in the record than the appellant thinks necessary.   In such cases the appellant is sometimes remediless, excepting in so far as this Court may give relief when the case is decided, or there may be cases in which the appellant can have transmitted such portions of the record as he deems necessary, and if he does not have enough to properly present the questions involved, a writ of diminution can be applied for by the opposite party.   But if the theory of the appellants in No. 60 be adopted, an appellant of moderate means might be deprived of his appeal because he could

not have the whole record transmitted and printed—although he did have all that was necessary for the purposes of his own case.   What we said in *Maynadier* v. *Armstrong*, 98 Md. 175, has some bearing on what we have stated above.

We therefore refused to order the writ of diminution at the cost of John A. Boyce, but we granted the other appellants leave to have the additional record transmitted and printed at their own cost—provided they had it printed in time for the hearing of the appeals, which we have placed at the end of the docket.   We adopted that course by reason of the pendency of this appeal and the application for the writ of diminution, and were of the opinion that, under the circumstances, those appellants should not lose the right to have all the questions involved in their appeals heard, because the portion of the record applicable to some of those questions had not been transmitted.   If they be unable to have the additional record transmitted and printed it is to be regretted, but that would not justify us in requiring John A. Boyce to pay the costs when he is not liable for them.

There was a motion to dismiss this appeal, but without discussing it at length we will overrule it.   As John A. Boyce and William W. Boyce appealed individually, it will be unnecessary to determine whether the latter, as one of the executors, and John Albert Boyce, Jr., as a remainderman, have such interests as would authorize them to appeal.   There can be no doubt that John A. and William W. have such interests under the will as to be injuriously affected by this order which was, as we have determined, improperly passed, and we can see no possible reason why they should be precluded from protecting their own interests merely because they were named as executors and were appointed trustees for their sisters by the testator, and qualified as such executors.   They have not in point of fact actively entered upon their duties as trustees, as the estate has not yet been settled, but conceding that by qualifying as executors, they thereby accepted the trusts created and imposed upon them by the will, and not stopping to inquire how John A. ceased to be an executor as he appar-

ently did, we cannot under the principle relied on by the appellees—that a trustee cannot act contrary to the interests of his trusts, inasmuch as his first duty is to protect his trusts— announce as the law of this State such an inequitable doctrine as to hold that the principle above stated prevents those parties from protecting their own shares from loss by reason of an order improvidently passed by the lower Court. The *cestuis que trustent* employed their own counsel who represented them below and in this Court, and there is not the slightest suggestion that these appellants in any way interfered with their management of the appellees' side of the case. Indeed the executors would be derelict in their duty if they did not endeavor to have all the children of James Boyce charged with such amounts as they are properly chargeable with, under the provisions of the will. And it would be a strange rule of law, if two beneficiaries under a will who happen to be named as trustees for three others must be required by reason of that fact to allow the three to use part of the estate the two are entitled to in order to carry on litigation for their own benefit. A conventional trustee can appeal to this Court if he is interested as a creditor in the fund to be distributed. *Frey* v. *Savings Institution,* 58 Md. 151. A trustee in insolvency proceedings has the right of appeal if he has an interest in reference to his allowance for commissions and expenses, or as a creditor of the insolvent. *Salmon* v. *Pierson,* 8 Md. 297. And other cases might be cited to sustain the right of a trustee to appeal when he is injuriously affected by the decision below, but when the trustees are also beneficiaries under a will, as in this case, there would seem to be no question about their right of appeal in their individual capacity from an order or decree injuriously affecting their shares.

> *Motion to dismiss appeal overruled, and order reversed, the appellees to pay the costs.*