CHARLES H. McCOMAS, Administrator of Mary
E. Wiley, Deceased,

vs.

THOMAS H. WILEY, et al., Administrators of
Charles F. Wiley, Deceased.

*Decision of Court of Appeals—Conclusiveness—Administration
Account—Counsel Fees—Funeral Expenses.*

The Court of Appeals having decided that a balance in the
hands of an administrator belonged, not to decedent's next of
kin, but to the administrator of his wife, the Orphans' Court
had no authority thereafter to allow out of such fund fees for
the payment of counsel employed by the unsuccessful claimants.

pp. 589-593

Since Code, Art. 93, Sec. 5, limits the allowance of funeral
expenses to the sum of three hundred dollars, the Orphans'
Court, after allowing that amount for that purpose, cannot
make a further allowance for tombstones, on the theory that
one-half of the original allowance was for the funeral expenses
of decedent's wife and child, who died at approximately the
same time as decedent, and that two-thirds of the proposed
allowance was for the tombstones of the wife and child.

pp. 588, 589

*Decided January ·14th, 1920.*

Appeal from the Orphans' Court for Harford County.
For former appeals, see 132 Md. 406; 134 Md. 572.

The cause was argued before Boyd, C. J., Burke, Thomas,
Pattison, Urner, Stockbridge and Adkins, JJ.

*Wm. Pinkney White*, for the appellant.

*Shirley Carter* and *Stevenson A. Williams*, for the appel-
lees.

THOMAS, J., delivered the opinion of the Court.

On the 12th of August, 1918, Thomas H. Wiley, Richard H. Wiley, Harry F. Wiley and Robert L. Wiley, administrators *c. t. a.* of Charles L. Wiley, deceased, passed their administration account in the Orphans' Court of Harford County, in which they charged themselves with the personal estate of the decedent to the amount of $4,477.54, were allowed for "payments and expenses" amounting to $2,563.63, and stated the "balance in hands of administrators for distribution" to be $1,913.91.

On the 3rd of September, 1918, Charles H. McComas, administrator of Mary Edith Wiley, deceased, filed a petition in said Court, setting out the appointment by said Court of the said administrators *c. t. a.* of Charles L. Wiley, and also his appointment as administrator of Mary Edith Wiley, and alleging that Charles L. Wiley, by his will of record in said Court, gave his wife, Mary Edith Wiley, all his estate, both real and personal; that on the 22nd of June, 1917, the said Charles L. Wiley and his wife, and their only child, an infant, while crossing the tracks of the Pennsylvania Railroad Company in an automobile were "run into by a train of said company, and the testator and his child were thrown" against an embankment "and both of them were found dead"; that Mrs. Wiley was thrown "from the automobile upon the front of the first locomotive" attached to the train "and was carried several hundred feet down the tracks" of the railroad company "and was found living"; that the administrators *cum testamento annexo* of Mr. Wiley had filed "their first and final administration account showing in their hands for distribution the sum of $1,913.91," and that the petitioner, as the administrator of Mrs. Wiley, who, he averred, "outlived both the testator * * * and her infant child," was entitled under the will of Mr. Wiley "to receive the said sum of $1,913.91, now ready for distribution." The petition prayed the Court to pass an order directing the administrators *c. t. a.* of Mr. Wiley to pay to the petitioner the

said sum of $1,913.91 in their hands, as shown by their administration account. The administrators *c. t. a.* of Mr. Wiley answered the petition, admitting their appointment as administrators *c. t. a.* of Mr. Wiley, the appointment of the petitioner as administrator of Mrs. Wiley, that Mr. Wiley left a will giving all his estate to Mrs. Wiley, and that they had, as alleged in the fifth paragraph of the petition, stated their "first and final administration account showing in their hands for distribution the sum of $1,913.91." The answer alleged that Mr. and Mrs. Wiley and their child "perished in a common disaster"; that it was "impossible to determine the order of their respective deaths," and that the respondents therefore denied that the will of Mr. Wiley was effective or operated to pass any of his property or estate to Mrs. Wiley, and denied that the petitioner was entitled to receive "any sum out of said estate," and further alleged "that by reason of said will being so inoperative and ineffective, the personal estate" of Mr. Wiley "passed to his brothers and sisters," the respondents, and Elizabeth A. Slade and Caroline B. Anderson, "as his only distributees." The Orphans' Court, holding that it appeared from the evidence that Mrs. Wiley did not survive her husband, and that therefore the will of Mr. Wiley did not take effect, passed an order dismissing the petition, requiring the petitioner to pay the costs, and directing the personal estate of Mr. Wiley to be "distributed equally amongst" his next of kin. On appeal this Court took a different view, and after stating that it was alleged in the petition that the personal representative of Mrs. Wiley was entitled to receive from the administrators *cum testamento annexo* of the estate of Mr. Wiley a fund of $1,913.91, "which their administration account shows to be the amount of the personal estate for distribution," and after a full and careful review of all the evidence, JUDGE URNER, speaking for the Court, said: "The testimony of Dr. Bortner that Mrs. Wiley must have died at the instant she was injured is not so convincing and conclusive as to induce us to adopt his

opinion in preference to the direct observation of witnesses who testify that she was in fact alive some time after her injuries were received. If, however, his opinion were to be accepted as decisive upon the question as to the sequence of the deaths with which we are concerned, the result would nevertheless be adverse to the ultimate interests of the respondents. As already noted, Dr. Bortner testified that Mr. Wiley survived his wife for the brief interval of time between the colliding of the engine with the automobile and the striking of his head against the rocks sixty feet distant. If this theory that Mrs. Wiley predeceased her husband were to be adopted, the estate in litigation bequeathed to her by his will would belong to her next of kin by force of the statute to which we have referred. But our conclusion from the evidence is that Mrs. Wiley survived her husband and that by virtue of the provisions of his will in her favor the administrator of her estate is entitled to the fund in controversy." The order of this Court was: "Order reversed and cause remanded to the end that an order may be passed in accordance with the opinion of this Court, the costs to be paid out of the estate."

After the case was remanded to the Orphans' Court, that Court, on the application of the administrators *c. t. a.* of Mr. Wiley, passed the following orders:

"The application of administrators *c. t. a.* of Charles L. Wiley, deceased, for permission to expend a reasonable sum of money in the erection of tombstones over the graves of Charles L. Wiley, Mary Edith Wiley, his wife, and Ruth Wiley, their child, came on to be heard. The administrator of Mary Edith Wiley was duly notified of said application, and argument of counsel was had in open court; it is thereupon, this 22nd day of July, in the year 1919, by the Orphans' Court of Harford County, adjudged and ordered that such an allowance as that prayed be made and that the sum to be expended for such purpose be and the same is hereby fixed at three hundred dollars ($300), and it is further ordered that the said administrators pass

a second account in the aforesaid estate of Charles L.
Wiley wherein the said allowance shall appear."

"The application of the administrators c. t. a. of
Charles L. Wiley, deceased, for an allowance for coun-
sel fees in the settlement of the estate of the said
Charles L. Wiley, and in the determination and con-
duct of the various questions and suits that have arisen
therein in this court and in the Court of Appeals, com-
ing on to be heard, and due notice thereof having been
given to the administrator of Mary Edith Wiley, both
sides having appeared in the said court by counsel were
heard. It is thereupon this 22nd day of July, in the
year 1919, adjudged and ordered that an allowance of
counsel fees be made to the said administrators for the
services of Shirley Carter and Stevenson A. Williams
in this court and in the Court of Appeals as aforesaid,
and that the sum of seven hundred and fifty dollars
($750) be fixed as the sum to be allowed the adminis-
trators to be paid to the said attorneys, and it is fur-
ther ordered that the said administrators pass a second
account in the aforesaid estate of Charles L. Wiley,
wherein the said allowance shall appear."

In pursuance of said orders. an account was stated by the
administrators of Mr. Wiley and passed showing, after de-
ducting the costs in this Court of said appeal, the cost of
printing the brief of the appellees in support of a motion for
reargument, the costs in the Orphans' Court, and the $300.00
and $750.00 allowed by said orders, a balance in their hands
of $215.65. The present appeal is, however, from the *two
orders* of July 22nd, 1919, and brings up for review the
allowance of $300.00 for tombstones and the allowance of
$750.00 for counsel fee.

1. Section 5 of Article 93 of the Code (1912), authorizes
the Orphans' Court, in its discretion, to allow funeral ex-
penses "not to exceed three hundred dollars," and it appears
from the record of the former appeal (No. 13 Appeals, April
Term, 1919), that $365.50 was allowed in the first account
for funeral expenses and $12.50 was allowed for "digging

grave." The appellees claim that those allowances were for funeral expenses of Mr. and Mrs. Wiley and their child, and that if one-half of those amounts be deducted for the funeral expenses of Mrs. Wiley and her child, and if one-third of the $300.00 allowed by the above order for tombstones be taken as allowed for Mr. Wiley's tombstone, the aggregate of *his* funeral expenses will be only $289.00. Apart from the question whether the husband's estate can be said to be liable for the funeral expenses of a wife who, as in this case, *survived him,* the obvious answer to the suggestion of the appellees is that the power and authority of the Orphans' Court to allow for funeral expenses is limited by the statute to $300.00, and if that provision should be construed to apply *only* to the funeral expenses of the decedent whose estate is being administered, the Orphans' Court is without authority to allow other funeral expenses. The limit fixed by the statute having been exceeded in the first account of the appellees it is clear that the Orphans' Court had no power to make a further allowance.

2. In reference to the counsel fee allowed the appellees rely upon the cases sustaining an allowance of counsel fees to an executor who resists a caveat to a will filed after the will has been admitted to probate, and upon *Young's case,* 8 Gill, 285. In the caveat cases referred to the allowance rests upon the theory that after the will is admitted to probate it is the duty of the executor to defend it. In *Young's case* the fee was allowed an administratrix, who successfully asserted her right to letters of administration, in analogy to the practice of allowing an executor for costs in defending a caveat. The Court said in *Young's case*: "The trust and confidence created by a testator in the selection of his executor, is in the case of administration, created by law. The custodiary, in his relation to the person and estate of the intestate, is distinctly designated, first, to prevent litigation about the possession, and secondly, 'for the security of the

estate'; and under our testamentary system, this right can-
not be delegated." After referring to the provision of the
law authorizing expenditures to be incurred "in the recovery
or security of any part of the estate" the Court said further:
"The principle upon which the rightful party, designated by
law, claims the administration, and incurs the expense of
securing it, must be presumed to be the same—the recovery
and security of the estate from the claim of one who has no
legal right to disturb it." In the case at bar the counsel fee
in question was certainly not incurred in the *recovery* of any
part of the estate, and the only question involved in the con-
troversy was whether the ascertained balance of the estate
in the hands of the administrators for distribution belonged
to the personal representative of Mrs. Wiley or the next of
kin of Mr. Wiley, *four of whom* were his said administra-
tors, the appellees. In *Dalrymple* v. *Gamble,* 68 Md. 156,
Edwin A. Dalrymple died in Baltimore City, intestate, and
leaving a large estate to which his two brothers and two
sisters became entitled. Dr. Dalrymple, one of the brothers,
took out letters of administration, and upon receiving in-
formation of the death of the other brother in California, Dr.
Dalrymple also took out letters of administration upon his
estate in Maryland. After taking out letters of administra-
tion upon the estate of his brother William who died in
California, Dr. Dalrymple received information that it was
claimed that his brother William left a will by which he left
his estate to one who claimed to be his widow, and believing
the will and the claim of the alleged beneficiary to be fraudu-
lent, he determined to resist the will and took steps to that
end in his name and the names of his sisters. The litigation
resulted in establishing the will; his letters were revoked and
letters of administration *c. t. a.* were granted to him and
another, and when he proceeded to pass an account of his
partial administration before the revocation of his letters, he
claimed an allowance for certain costs and counsel fees in-
curred in the litigation over the will in California. The

Orphans' Court refused to grant the allowance, and on appeal its order was affirmed. In disposing of the case this Court, after referring to the provisions of Section 5 of Article 93 of the Code authorizing an allowance "for costs and extraordinary expenses (not personal) which the Court may think proper to allow, laid out in the recovery or security of any part of the estate," said: "But it is hard to perceive in what sense that proceeding was for the recovery, security or preservation of any part of the estate. The existence of the estate and the right of William H. Dalrymple's proper representatives to it, was in no way questioned. The only possible controversy was to whom it should go—to the alleged devisee and legatee, or to the Maryland brother and sisters. It was purely one of distributive right. * * * If successful it could only bring benefit to the plaintiffs therein; and it brought nothing, and secured nothing to the estate as such. * * * Suppose the estate in Maryland had only been $7,000, then on the theory of the appellant of his right to allowance of the claim preferred, the whole estate would be more than exhausted; and very anomalously, the person who successfully maintained a right to it under the will, would be denied the fruits of her title, and be made to pay the expenses of defending her own rights, and also those of the persons whom the courts trying the case decided had wrongfully interfered to defeat the right which was established." Again in the case of *Koenig* v. *Ward,* 104 Md. 564, where after a successful caveat by two daughters to the will of their father, which gave them nothing, fees were allowed by the Orphans' Court to counsel for the caveators, this Court said: "In the present case the appellants who are entitled to by far the larger part of the estate were not benefited but were injured by the result of the caveat, and there is no reason why they should be required to pay the costs incurred in its prosecution. Nor can it be successfully contended that the services of the appellees were beneficial to the estate which was neither augmented nor enlarged in any manner by the result of the proceedings under the caveat. The purpose

and operation of the caveat were not to recover the estate, or to protect it from spoliation, but to determine who should get it, and in what proportions. The practical question litigated and settled under the caveat was one of distributive right, *i. e.*, whether the estate should be divided between the beneficiaries under the will or the heirs at law and distributees of the decedent. It was not an issue between the estate and third parties but one *inter partes* those claiming to be interested in its distribution. Under these circumstances the Orphans' Court had no authority to allow counsel fees to be paid out of the estate."

Tested by the reasoning of the Court in the above cases, the counsel fee here in question, so far as it relates to services rendered in the Orphans' Court and in this Court in the cases of the first appeal (132 Md. 406), and the second appeal (No. 13 Appeals, April Term, 1919), would not seem to be within the authority conferred upon the Orphans' Court by Sec. 5 of Art. 93 of the Code, unless the case at bar can be distinguished on the ground that the appellees were made defendants in the petitions in the former appeals. The estate of Mr. Wiley was not benefited by the litigation referred to; the only question involved was "one of distributive right," and the real controversy was not one between the estate and third parties, but between those claiming to be interested in the distribution.

But we are not required to decide in this case whether counsel fees could properly be allowed out of an estate for services of the kind claimed to have been rendered the appellees, for independent of the considerations mentioned, the question of the propriety of the allowance in this case is put at rest by the case of *Dorsey* v. *Dorsey,* 10 Md. 471. In that case there had been a suit for the construction of a will and the ascertainment of the rights of Arabella Dorsey in the estate of the testator, and particularly in the sum of $3,503.49, the balance in the hands of the executor after the payment of debts, expenses of administration and certain legacies. The Orphans' Court had passed an order directing

the executor to pay that sum to Arabella Dorsey, and on appeal that order was affirmed. Thereafter the executor filed a petition praying the Orphans' Court for authority to pay out of said balance in his hands certain reasonable fees alleged to be due by him to his counsel "for services rendered in arguing said cause in the Orphans' Court, and in the Court of Appeals." The prayer of the petition was refused by the Orphans' Court, and on appeal its order was affirmed, JUDGE BARTOL saying: "The decision of this Court, already referred to, affirming the order (of the Orphans' Court) of the 6th of October, 1855, was a final adjudication upon the question involved, which definitely established the right of Arabella Dorsey, the appellee in that case, to the said sum of $3,503.49, the balance then in the hands of the executor, and the Orphans' Court could not rightfully apply any part thereof to the payment of the alleged fees, even if they were established by proper proof to be due, and were adjudged to be payable out of the estate of William Dorsey." The question in No. 13 Appeals, April Term, 1919, was whether the balance of $1,913.91 in the hands of the administrator *c. t. a.* of Mr. Wiley for distribution belonged to the personal representative of Mrs. Wiley, or to the next of kin of Mr. Wiley, and this Court decided that Mrs. Wiley's personal representative was entitled to it. That decision, as said by JUDGE BARTOL, was a final adjudication upon the question involved, which definitely established the right of the appellant in this case to said sum of $1,913.91, less the costs which this Court directed to be paid out of the fund, and the Orphans' Court had no authority to apply any part of it to the payment of the fee in question. The cases of *De Bearn* v. *Winans,* 115 Md. 139, and *Cotten* v. *Tyson,* 121 Md. 597, relied on by the appellees, are not in conflict with *Dorsey* v. *Dorsey, supra,* but are simply illustrations of the power of a *Court of Equity* to allow the costs of litigation out of the fund involved. In *De Bearn's case* the fee was allowed to counsel who was appointed *at the instance of Prince De Bearn* to represent

the interests of his infant children in a suit brought by him in equity to set aside, on the ground of mistake, a distribution of his wife's estate in the Orphans' Court of Baltimore City, and in disposing of the objection to the fee this Court said: "The title of these children to this property was absolute against all the world except their father. He alone could successfully attack it, as he has subsequently done, and it comes with ill grace from him, after invoking the aid of a Court of Equity to relieve him from a distribution of his wife's estate to which he deliberately agreed (though it is just to say upon mistaken advice), and after himself asking that counsel be employed to defend their interests against *his* attack, now to seek to defeat the claim of such counsel to any remuneration out of the fund in controversy, well knowing that these children had no other property out of which compensation could be made." The fee was sustained by this Court on the principle that he who seeks equity must do equity. Nor do the cases like *Bantz* v. *Bantz,* 52 Md. 686, holding that errors in accounts of administrators and executors may be corrected, sustain the power of the Orphans' Court to allow counsel fees out of a fund that has been adjudged by this Court to be the property of one against whom the services of counsel were rendered.

It follows from what has been said that the orders appealed from must be reversed, and case remanded in order that an order may be passed in accordance with this opinion.

In view of the conclusion we have reached, it will not be necessary to pass upon the petition of the appellant filed in this Court August 16th, 1919.

> *Orders reversed and case remanded to the end that an order may be passed in accordance with the opinion of this Court, the costs in this case, in the Court below and in this Court, to be paid by the appellees.*