## In re Estate of James B. Purefoy, Deceased. P. W. Coleman, Appellee, v. R. M. O'Connell, Appellant.

### Gen. No. 8,344.

524

Opinion filed February 3, 1930.   Modified and refiled April 4, 1930.   Rehearing denied April 4, 1930.

RICHARD M. O'CONNELL and EDWARD A. PRINDIVILLE, for appellant.

MORRISSEY & MORRISSEY, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This cause arose upon a claim presented to the probate court of McLean county to recover upon a bill for undertaking. James B. Purefoy died intestate on October 21, 1927. His heirs were six cousins. Appellant was appointed administrator of his estate on October 24, 1927, by the probate court of McLean county.

On November 4, 1927, appellee, P. W. Coleman, a Bloomington undertaker, filed his claim against said estate for the funeral of deceased in the sum of $1,793.25. The first item in said claim is for a casket at $1,600. The administrator objected to said claim in the probate court, and after a hearing it was allowed in full. The administrator appealed to the circuit court, where a hearing was had before the judge without a jury, resulting in a judgment allowing the claim in full. The administrator has appealed to this court.

At the time of his death James B. Purefoy was over 70 years old. Formerly he had been a saloon keeper

and at the time of his death lived on Folsom Street in the City of Bloomington with a housekeeper, Nellie Herrin. Up to the time of his death he was in perfect health, and he died very suddenly about 9 o'clock in the evening. His estate consisted of farm and city property and personal property amounting to a net of about $23,000.

All of the relatives of deceased lived in Chicago. Without making any effort to notify the relatives, the housekeeper, who was a witness for appellee, consulted a Bloomington lawyer, D. J. Sammon, who also was a witness for appellee, and this lawyer consulted the probate judge. The probate judge said that in the absence of relatives they could go ahead with the funeral arrangements.

Nellie Herrin, the housekeeper, who was not related to the deceased, went to appellee's undertaking establishment and selected a casket costing $1,600. Appellee went to the telephone and called the probate judge, asking him regarding Nellie Herrin's authority to make the funeral arrangeemnts, but did not tell the judge that she had selected a $1,600 casket.

The funeral was on Monday morning. On Sunday evening about dark three women who were heirs, and a man who was not an heir came from Chicago. At the time they arrived at the house the body was in the casket and the house was well filled with mourners.

Proofs were presented tending to show that the charge for the casket was the usual and customary charge for similar caskets in Bloomington. There were no proofs presented showing or tending to show that the casket or the expense of the casket or the expenses of the funeral were suitable to the condition and station in life of the deceased. The law upon this phase of the subject is very well stated in *Weinstein v. Lotsoff*, 232 Ill. App. 566, where the court says, on page 582: "We are of the opinion that in order that the plaintiff may recover it is essential that he should

prove by a preponderance of the evidence that the expenses of the funeral were suitable to the condition and station of life of the husband, the defendant. 1 Bishop on Marriage, Divorce and Separation, sec. 1258, p. 538; 15 Amer. & Eng. Encyc. of Law, p. 880 (2nd ed.); *Kenyon v. Brightwell*, 120 Ga. 606, 609, 610; *Jenkins v. Tucker*, 1 H. Blackstone, 91, 94. As far as we are able to discover, there is no evidence at all in this respect. What may be a proper expense for the funeral of the wife of one husband, may be wholly inappropriate for the funeral of the wife of another husband. The mere fact that the cost of the items for the funeral may be reasonable is not sufficient. In addition to proof of the reasonable cost of the items for the funeral, it must be shown that the funeral expenses were suitable and proper to the condition and station of life of the husband. For example, according to the testimony in the case at bar, some caskets cost as much as $1,000. This may be a reasonable cost of some caskets, but before a husband could be held liable to pay for such a casket it would be necessary to show that the casket was suitable and proper to the condition and station of life of the husband.''

It has been further held: "In America, funeral expenses are sometimes classed with debts of the deceased. . . . It is clear that if the executor voluntarily pays them, he must be allowed credit for the disbursement as an expense incident to the administration, because the funeral is a work of necessity, as well as of charity and piety. Hence it is the duty of the executor or administrator to bury the deceased in a manner suitable to the estate he leaves behind him, there is no distinction in this respect between an executor and an administrator; and if this duty, in the absence or neglect of the executor is performed by another—not officiously, but under the necessity of the

case—the law implied a promise to reimburse him for the reasonable expenses incurred and paid." (Woerner, American Law of Administration, sec. 357, page 1188, vol. 2, 3rd ed.; *O'Reilly v. Kelly,* 22 R. I. 151, 50 L. R. A. 483.)

The above rule is sustained by the overwhelming weight of authority. The reason for the rule is well stated by the New York court in *Patterson v. Patterson,* 59 N. Y. 574, 17 Am. Rep. 384, in which that court says:

"I have no doubt that the reasonable and necessary expenses of the interment of the dead body of one deceased are a charge against his estate, though not strictly a debt due from him. The ground of this is the general right of everyone to have . . . his body carried, decently covered, from the place where it lies to a cemetery or other proper enclosure, and there put underground. . . . In the last case, in which an infant, a widow, was held liable on her contract for the funeral expenses of the burial of her deceased husband, it was said: 'There are many authorities that lay it down that decent Christian burial is a part of the man's right, and we think it no great extension of the rule to say that it may be classed as a personal advantage and reasonably necessary to him.' This right existing, the law casts upon someone the duty of seeing that it is accorded. . . . So it would seem, at common law, that if a poor person of no estate dies, it is the duty of him under whose roof his body lies, to carry it, decently covered, to the place of burial. . . . And where the owner of some estate dies, the duty of the burial is upon the executor. . . . From this duty springs a legal obligation, and from the obligation the law implies a promise to him who, in the absence or neglect of the executor, not officiously, but in the necessity of the case, directs a burial, and incurs and pays such expense thereof as is reasonable. . . .

And so in *Rogers v. Price, . . .* it was held that an executor, with assets, is liable to a brother of the deceased for the proper expenses of a funeral ordered and paid for by the latter in the absence of the former."

The above rule is recognized in this State. We have found no Supreme Court cases passing upon the question, but it has been passed upon by the Appellate courts. In *Golsen v. Golsen,* 127 Ill. App. 84, the court says:

"The deceased had to be buried before the issuance of letters of administration, and there can be no question that the plaintiff could have legally contracted for the services of an undertaker to conduct the funeral of her deceased husband, and the things necessary therefor, and that the estate would be chargeable therewith, and if she could so contract, she could authorize another to do so. A stranger, under such circumstances, and especially a relative of the deceased, may contract for the funeral of the deceased person and pay for the same, and the expense, if reasonable, will be allowable" (citing the *Patterson* case, above mentioned, and a case in 16 Pickering 343).

Funeral expenses have always been regarded as necessary charges to be paid out of a decedent's estate, and it is intended by the law that funeral requirements should be furnished upon the credit of the estate rather than that there should be any hesitation in rendering the service and furnishing the necessary articles until inquiry can be made as to who is liable to pay, and his financial responsibility. *Stevens v. Williamson,* 222 Ill. App. 258.

"The ancient notions upon the subject of funerals have undergone considerable change in the efflux of time, both in England and America, in respect of the services and incidentals deemed requisite, as well as the magnitude of the outlay therefor. . . . It is to be observed, however, that there is a difference, in the

amount that may be a proper expenditure, between estates that are solvent or insolvent, large or small, as appears in the two following sections. The rights of creditors should not be defeated or jeopardized by the allowance of credit for extravagant monuments or tombstones. . . . It has never been questioned that the funeral expenses are to be restricted to the amount necessary to bury the deceased in the style usually adopted for persons of the like rank and condition in society. A distinction is observed in this respect between solvent and insolvent estates, the rights of creditors being looked upon as more imperative than those of the next of kin. In early times very strict rules were established to limit the amount allowed for funeral expenses as against creditors; but, probably in consequence of the change in the value of money, and also, no doubt, because more liberal views prevailed in the courts of the time, the limitations were, from time to time, extended by the courts. . . . But no precise rule is laid down at the present time, either in England or America; as in cases of solvent estates, so in those of insolvents, reasonable expenses according to the decedent's condition in life must be allowed. In determining what is reasonable, an undertaker is chargeable with only such knowledge as to the decedent's property, etc., as is apparent upon reasonable observation, and is entitled to payment of his demand in full, if in accordance with decedent's apparent condition, although the estate prove insolvent. . . .

"Impossible as it is to lay down a precise rule to be followed in respect of the funeral expenses allowable in insolvent estates, even greater latitude is necessary where there are sufficient assets to pay the debts. The circumstances determining what is reasonable in such cases are numerous, and the degree of importance attached to each is incapable of exact measurement, impressing themselves more or less strongly on different minds. Public opinion and gen-

eral expectation, fashion, the feelings of friends and neighbors, the age, standing, property and habits of life of the decedent, as well as the standing and rank in society of the surviving family, must all be considered. . . . Nor can a testator absolutely limit the executor in the performance of his duty to give a decent burial to the testator by any provision in the will, when such provision is inadequate." (Woerner's Adm. secs. 358–360, 3rd ed., vol. 2, pages 1190–1196.)

There can be no doubt in this case as to the right and propriety of Nellie Herrin, living in the home of the deceased and in the absence of the next of kin, to make the arrangements for the funeral, and acting in her individual capacity or as an executrix *de son tort,* to bind the estate. Whether the nature and expense of the casket "was in the style usually adopted for persons of the like rank or position in society" in the neighborhood of the residence of the deceased, as laid down by the authorities cited by appellee, is purely a question of proofs to be presented by those familiar with such matters in the City of Bloomington, at the time deceased passed away. There are no such proofs in this record and the circuit court of McLean county erred in allowing the claim of appellee for the full amount without the proofs to sustain such a finding.

Appellee, over the objection of appellant, was permitted to testify to various statements made by the deceased in his lifetime against the appellant as administrator. This was error. The witness Nellie Herrin was also an interested party and liable to appellee for any part of the bill not allowed against the estate, and therefore an incompetent witness as to any statements made by the deceased in his lifetime to the witness.

Appellant assigns error that "the court erred in assessing damages against the defendant." This assignment of error is sustained and the judgment of

the circuit court of McLean county is reversed and the cause remanded to the circuit court of McLean county for further proceedings, not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*

It is contended on petition for a rehearing, that under the proofs in this case that the witness Nellie Herrin was not an interested party, and that her testimony was competent and that the deceased was entitled to such a funeral and at such an expenditure, as the deceased had indicated to his housekeeper, in his lifetime, that he desired.

It may be, from the proofs, that the claimant took the sole responsibility for the expenditure, and that the deceased had made statements as to the nature of the memorial planned. He expressed nothing in writing or by will, and the judgment of the court below is in error in ignoring the fundamental requisite in the proofs, that the expenses of the funeral were suitable to the condition and station in life of the deceased and his estate, and we do not feel that we are permitted, in this case, to lay down a rule directly contrary to the rule established in *Weinstein v. Lotsoff*, 232 Ill. App. 582, and many other cases. The petition for a rehearing is denied.