## Succession of HOLSTUN.

### FLEMING v. FIRST NAT. BANK IN GIBSLAND et al.

#### No. 4261.

Court of Appeal of Louisiana. Second Circuit.

May 20, 1932.

Goff & Goff, of Arcadia, for appellants.

P. E. Brown, of Arcadia, for appellee.

McGREGOR, J.

This is a contest among the creditors of an insolvent succession over the proceeds of the sale of succession property, raised by oppositions to the account of the dative testamentary executor.

Miss Fay Holstun, a resident of Bienville parish, whose succession is involved herein, died testate in the city of Shreveport on June 25, 1930, and her will was probated by the judge of the Second district court two days thereafter. The heirs of the deceased were her mother, brothers and sisters, and nephews and nieces. In her will she bequeathed all of her property, both real and personal, to four of her nephews and nieces, and no objection was raised by any of the other heirs to this disposition of her property.

Soon after his appointment, the executor discovered that the succession was insolvent and that the property would be insufficient to pay the debts of the deceased. In due course of administration the property was all sold under orders of the court as the law directs, and the executor prepared and filed an account which included a tableau of the debts of the succession and asked for authority to pay them according to the rank he had assigned to each.

Within the time allowed by law several oppositions to the account were filed, and upon trial these oppositions were rejected except that one item of $18, which had been listed on the account as a privileged claim,

was transferred to the list of ordinary claims. Two opponents, the First National Bank in Gibsland and Brown Hardware Company, whose oppositions were not sustained, have appealed. When these two oppositions were filed the testamentary executor filed exceptions of no cause of action and objected to their being filed. He has answered the appeals and asks that the exceptions be sustained in this court and the oppositions dismissed.

The tableau of claims against the succession is divided into three divisions, namely:

(1) Costs of administration and taxes.

(2) Expenses of last illness and funeral.

(3) Ordinary claims.

■ The first question to be disposed of is the exception of no cause of action filed by the testamentary executor against the oppositions of the First National Bank in Gibsland and Brown Hardware Company. These exceptions raised questions that go to the merits of the two claims and suggest no apparent reason why the opponents have no right to object to the allowance of the items which they seek to oppose. In making up the account and tableau of claims which he proposes to pay, the executor listed the claims of both opponents without objection. He certainly cannot be heard now to object to the oppositions on the ground that the opponents have not made demand upon the decedent during her lifetime, nor upon the representative of her estate since her death. No formal demand needed to be alleged in the oppositions for the reason that the executor had already received, filed, allowed, and recognized the claims as valid and placed them on the tableau of debts to be paid. The exceptions have no merit and were properly overruled.

The oppositions of the two appellants are identical and present serious questions for determination. The items opposed are as follows:

"a. Claim of Harry Holstun for expenses paid on account of last illness, with legal interest from demand, $406.30.

"b. Claim of Harry Holstun for expenses of tombstone for Fay Holstun, with interest, $103.53.

"c. Claim of Mrs. Ada H. Peyton, for expenses paid, with legal interest from demand, $164.85.

"d. Claim of Frank C. Holstun, for expenses paid, with legal interest from demand, $32.55.

"e. Claim of Mrs. Annie Lou Jones for expenses paid, with legal interest from demand, $69.30.

"f. Claim of Telephone Company for bill made during last illness and death of Miss Fay Holstun, $18.00."

■ The last of the above items was very properly disapproved by the lower court as a privileged claim and was transferred to the list of ordinary claims. All the other items were approved by the court and recognized and ranked as privileged claims. It is from this decision that the two opponents have appealed.

When the account was prepared, it appears evident that interest was computed and added to the various items; hence, in dealing with them, there is an apparent discrepancy in the amounts. We will discuss each item separately, and the oppositions thereto.

### Claim of Harry Holstun

June 16, 1930, Sanitarium bill.......$ 33.00
June 23, 1930, Sanitarium bill........  37.00
June 24, 1930, Shroud for deceased...  29.90
June 25, 1930, Digging grave.........   3.00
June 26, 1930, Casket, etc.,..........  285.00

Total ........................$387.90

■ The opponents object to the allowance of any of the above as privileged claims on the alleged ground that Harry Holstun, who paid them, was not formally subrogated to the rights of those to whom he paid the several amounts. It is true that subrogation is necessary in some instances where heirs, relatives, or strangers pay certain claims against the succession. For instance, the law provides that wages of servants and the salaries of secretaries, clerks, and other agents shall enjoy privileges. These naturally arise and accrue during the lifetime of those who owe them. It is clear that no one except those enumerated in article 2161 of the Civil Code would be subrogated to these privileges upon payment without a conventional subrogation. Counsel are laboring under a misapprehension of the real status of the various items. They represent expenses incurred by claimant, Harry Holstun, a brother of the deceased, on account of the last illness of his sister. It would be a narrow construction of the law, indeed, to hold that the sanitarium bill must be held in abeyance until the settlement of the estate of the deceased, on account of whom the bill was incurred, and that a brother or other close relative could not bear or incur that expense with assurance that he would have a privilege for the sum so expended, in case of death, unless he was formally subrogated to the rights of the sanitarium at the moment of payment. When Harry Holstun paid the first sanitarium bill of $33 for his sister, she was still alive and there may have been no thought or expectation of her ultimate death; but since he did pay the bill as and when he did, he is entitled to be reimbursed, as the sum so paid was a part of the expenses of her last illness. As a matter of fact, he, himself, incurred the expenses and furnished the services of the sanitarium to her. The same line of reasoning

applies also to expenses incurred by Harry Holstun for the purchase of a shroud from Hearne Dry Goods Company, as well as to the expense of digging the grave and furnishing the casket. Therefore, the contention of the opponents that Harry Holstun is not entitled to have these various claims paid as privileged claims, on the ground that he has not been subrogated to the rights of those who received the money from him, is unsound.

Another objection urged against the items representing the sanitarium bills is that they were not recorded. In support of this contention, counsel cite Civil Code, art. 3274; Succession of Elliott v. Elliott, 31 La. Ann. 31; and Succession of Rhoton, 34 La. Ann. 893. Article 3274 of the Civil Code provides that:

"No privilege shall have effect against third persons, unless recorded in the manner required by law in the parish where the property to be affected is situated."

Article 3276 of the Civil Code provides that:

"The charges against a succession, such as funeral charges, law charges, lawyers' fees for settling the succession, the thousand dollars secured in certain cases to the widow or minor heirs of the deceased, and all claims against the succession originating after the death of the person whose succession is under administration, are to be paid before the debts contracted by the deceased person, except as otherwise provided for herein, and they are not required to be recorded."

These two articles, 3274 and 3276 of the Civil Code, are discussed in the case of the Succession of Elliott v. Elliott, 31 La. Ann. 31, and in ruling that physician's bills for service rendered during the last illness are not privileged unless recorded, the court said:

"The accounts though large, are fully proven to be at customary rates. The Civil Code declares that no privilege shall have effect as against third persons unless duly recorded. Art. 3274, C. C.

"However unreasonable this provision is when applied to cases like this, still it is the law, and is binding on this court. We know no law excepting or exempting such claims from the necessity of this registry. These claims can not be ranked therefore as privileged. We apprehend that claims which arise after the death of a party, and in the administration of his estate, and which the law classes as privileged, need not be recorded, since registry is without effect, after decease; and by giving the privilege under these circumstances the law manifestly intends to exempt them from registry. See, also, R. C. C., Art. 3276, so providing."

The case of Succession of Elliott v. Elliott, is cited with approval in Succession of Rhoton, 34 La. Ann. 893. So that, if articles 3274 and 3276 of the Civil Code, as interpreted in these two cases, were the latest expressions of the law on the subject, it would seem that counsel are right in contending that expenses of last illness are not privileged claims unless recorded. In spite of the interpretation of these two articles so as to require the recordation of claims for expenses of last illness to entitle them to the privilege accorded by law, there was a strong view to the contrary, that article 3276, under the proper interpretation, exempts these claims from recordation in that they are included in the term "charges against a succession," and that the reference to funeral charges, law charges, etc., is illustrative and not definitive. But be that as it may, in the Constitution of 1898 the matter was settled by the enactment of article 186, which reads as follows:

"No mortgage or privilege on immovable property shall affect third persons, unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law, *except privileges for expenses of last illness* and privileges for taxes, State, parish, or municipal; provided, such tax liens, mortgages, and privileges, shall lapse in three years from the 31st day of December, in the year in which the taxes are levied, and whether now or hereafter recorded." (Italics ours.)

In interpreting this clause of the Constitution, this court, in the case of Dinnat v. Succession of B. T. Lewis, 8 La. App. 820, has held specially that sanitarium and hospital bills are properly classified as expenses of last illness. This same article is cited in the case of Bauman v. Armbruster, 129 La. 191, 55 So. 760, 761, to the effect that expenses of last illness are not now required to be recorded in order to be ranked as privileged claims.

"Funeral charges rank *first* among the general privileges on movables. Civ. Code, art. 3252. If the movables are insufficient, such charges ought to be paid out of the product of the immovables belonging to the debtor in preference to all other privileged and mortgage creditors. Civ. Code, art. 3289. Funeral charges and other claims originating after the death of the de cujus are not required to be recorded. Civ. Code, art. 3276. Article 186 of the Constitution of 1898, in declaring that no mortgage or privilege on immovable property shall affect third persons unless duly recorded, simply repeats the provisions of the Civil Code, and adds to the list of exceptions contained in article 3276 privileges for 'expenses of last illness' and privileges 'for taxes.' In other words, article 186 of the Constitution places such privileges on the same plane as claims originating *after the death* of the de cujus, which the Civil Code has

never required to be recorded, 'since registry is without effect, after decease.' Succession of·Elliott v. Elliott, 31 La. Ann. 37."

This same provision is found in the Constitution of 1921, in article 19, § 19, which reads as follows:

"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, *except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected*, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December, in the year in which the taxes are levied, and whether now or hereafter recorded.

"Privileges on movable property shall exist without registration of same except in such cases as may be prescribed by law." (Italics ours.)

■ So that, under the law as it now stands, bills incurred for expenses of last illness, such as hospital and sanitarium bills, are not required to be recorded in order to be ranked as privileged claims. Therefore the opposition to those items on the account which represent expenses incurred for sanitarium bills are without merit.

■ Another objection raised to the claim of Harry Holstun for the burial expenses is that, since the succession is insolvent, $200 is the maximum amount allowable on account of funeral charges. This is a valid and legal objection, and the opposition must be sustained to that extent. Civ. Code, arts. 3193, 3194.

■ The last item on the account that is opposed is the claim of Harry Holstun for $102.-75, the price of a monument erected over the grave of deceased. There is no law or jurisprudence allowing a claim of this nature against an insolvent estate, either as a privileged or an ordinary claim, so this opposition to the allowance thereof is valid and must be sustained.

The next item on the account which is opposed is the claim of Mrs. Ada H. Peyton, a sister of the deceased, for the sum of $157, itemized as follows:

| | |
|---|---:|
| Dr. T. P. Lloyd, doctor's bill | $ 25.00 |
| Dr. J. L. Leopold | 15.00 |
| Dr. S. C. Barrow | 20.00 |
| P. E. Brown, attorney's fee | 25.00 |
| Court costs advanced | 6.00 |
| Nurse's wages | 66.00 |
| Total | $157.00 |

■■ The doctors' and nurse's bills paid by Mrs. Peyton are opposed on the ground that they are not recorded. For the reasons set out in our discussion of Harry Holstun's claim for expenses incurred on account of sanitarium services, these bills are not required to be recorded in order to be recognized as privileged claims. The claims for sums advanced for attorney's fees and court costs are opposed on the ground that the claimant was not formally subrogated to the rights of those who received these sums. No formal subrogation was necessary. The claims represent law charges incurred by the claimant for the benefit of the succession, and are privileged.

The next item opposed is the claim of Frank C. Holstun for $10 paid to Dr. J. M. Mosely, and $21 paid to Dr. O. L. Kidd. These claims are opposed on the ground that they are not recorded, and that the claimant was not formally subrogated to the rights of the parties who received the money. From the evidence it is clear that this claim represents expenses of last illness incurred by the claimant for the benefit of the deceased before her death. There is no merit in the opposition.

The next item opposed is the claim of Mrs. Annie Lou Jones, a sister of deceased, for $66 on account of nurse's bill paid by her for the benefit of the deceased. The objection raised is the same as is urged against other similar claims, and for the reasons already stated, there is no merit in the opposition.

■ For the reasons assigned, the judgment appealed from is amended so as to recognize the following claims against the succession:

#### Privileged Claims.

State and parish taxes, $91.50.

Town taxes, $28.95.

Court costs, $49.75.

Curator's fee, $10.

Balance due on attorney's fee, $150.

Executor's commission, $87.50.

Amount due Harry Holstun, $270 (with 5 per cent. interest from December 8, 1930).

Amount due Mrs. Ada H. Peyton, $157 (with 5 per cent. interest from December 29, 1930).

Amount due Frank Holstun, $31 (with 5 per cent. interest from January 13, 1931).

Amount due Mrs. Annie Lou Jones, $66 (with 5 per cent. interest from December 29, 1930).

#### Ordinary Claims.

Mrs. Annie Lou Jones, $350 (with 5 per cent. interest from December 29, 1930).

First National Bank in Gibsland, $750 (with 8 per cent. interest from October 1, 1929).

Brown Hardware Company, $250 (with 8 per cent. interest from January 1, 1930).

Telephone bill, $18.

As thus amended, the judgment appealed from is affirmed, the costs of this appeal to be paid by the succession.

PALMER, J., recused.