ZITO ET AL. EXECUTORS *v.* TICKNER ET AL.

[No. 141, October Term, 1955.]

*Decided May 3, 1956.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Malcolm J. Coan* for appellants.

*Howard E. DeMuth, Jr.,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The executors of the estate of a decedent appeal from an order of the Orphans' Court of Baltimore City directing them to pay an undertaking firm's claim for funeral expenses of the decedent in the amount of $737.00.

The question at issue is whether or not the undertakers may be required to give an itemization of a lump sum charge of $477.00, which covers the cost of the casket and some half-dozen other things or services furnished by them. The other charges which make up the total of $737.00 include some things furnished by the undertakers and some things furnished by others, and are satisfactorily itemized.

The executors refused to pay the bill without full itemization of the $477.00 charge, claiming that without a breakdown of such charges they could not determine whether or not the charges were reasonable. The appellees contend that "a funeral is sold as a unit" (at least insofar as the things and services covered by the lump sum charge are concerned) and that the price of the casket determines the price of the funeral. They support this by a somewhat unappetizing analogy to a restaurant practice under which the price of the entrée determines the price of the meal.

Section 6 of Article 93 of the Code (1951) provides that an executor or administrator, within ninety days after the grant of letters, "shall pay * * * the funeral expenses of his decedent, to be allowed in the discretion of the Orphans' Court according to the condition and circumstances of the deceased, in no event to exceed $300.00, except by special order of court, and provided the estate of the decedent be solvent," and it accords a preference to claims for funeral expenses over all other debts or claims, except those for taxes due and in arrear. This section further provides that if the funeral

expenses are not paid within ninety days the claimant may file a petition to require their payment, and that if the executor or administrator has received moneys applicable to the payment of funeral expenses, "the Orphans' Court shall, unless the validity of the claim [is] admitted by such executor or administrator, takes [take] proof as to the amount and validity of the claim, and if satisfied that such claim is valid, shall fix and determine the amount due thereon, and shall make an order directing the payment * * *." Also, failure to pay a claim for funeral expenses "the amount of which has been fixed and determined by the Orphans' Court" will bar the executor or administrator, on an accounting, from being allowed for the payment of any other debt or claim until the funeral expenses are paid in full, and such failure is also cause for his removal.

The Orphans' Court expressed a dislike of what it regarded as the established practice of not listing separately the items making up a funeral bill, but it took the view that it had no jurisdiction to go into individual items and that its function was merely to determine whether the aggregate charge was or was not excessive in the light of the condition and circumstances of the decedent. It held that the total charge in the instant case was not excessive under this test, and accordingly ordered the executors to pay the claim of $737.00.

Section 6 of Article 93 was enacted as a new section of the Code by Chapter 696 of the Acts of 1941. That Act seems to have been derived *verbatim* from Section 465 of the Code of Public Local Laws of Baltimore City, 1938 Ed. (Code, P. L. L. 1930, Article 4, Section 353A), which was before this Court in *Watson v. Cook,* 170 Md. 377, 184 A. 908, decided in 1936. In that case an undertaker sought payment of funeral expenses in the amount of $346.30. The Orphans' Court of Baltimore City found this amount excessive and allowed the claim only to the extent of $300.00, which it ordered paid. The executor appealed. This Court observed that in its opinion no abuse of discretion by the Orphans' Court had been shown, even if the order was reviewable on appeal; but it then went on to hold that the order was not so reviewable. After referring to the special qualifications of

the Orphans' Court derived from its experience with many estates, this Court expressed the view that the same reasons which support cases holding the allowance of commissions made by an Orphans' Court to executors or administrators not to be reviewable, applied with equal force to the allowance made by the order then under consideration and said that "inasmuch as the sum fixed for funeral expenses does not exceed the statutory limit, we must hold that in passing the order the Orphans' Court of Baltimore City exercised an irreviewable discretion."

Under that local law of Baltimore, just as under the present Section 6 of Article 93 of the Code (1951), the "statutory limit" was $300.00. Here the lump sum item of $477.00 exceeds that amount, and the total of $737.00 also exceeds the $500.00 funeral expense allowance which is now permitted under Section 5 of Article 93, without a special order of the Orphans' Court. The present case thus differs from *Watson v. Cook, supra.*

The order for the funeral in this case was given by a near relative, not by the executors. That, of course, is proper; the executors are bound under an implied promise to pay for the funeral, and, by statute, the undertaker is entitled "to a reasonable extent" to a "preferred charge upon the estate, because of the indispensable necessity for proper burial." *Lentz v. Pilert,* 60 Md. 296, at 300; *Watson v. Cook, supra.* The allowance of funeral expenses is within the jurisdiction of the Orphans' Court and is not a proper subject for issues to be sent to a court of law for trial. *Maynadier v. Armstrong,* 98 Md. 175, 56 A. 357. See also *Miller v. Gehr,* 91 Md. 709, 47 A. 1032, cited and followed in the *Maynadier Case,* which held that the allowance of a counsel fee for the attorney for the executors was within the jurisdiction of the Orphans' Court and was not a proper subject for issues.

Though the Orphans' Courts of this State are courts of special and limited jurisdiction, that fact does not require that the statutes expressly conferring jurisdiction upon them should receive any different or more restricted construction than other laws. *Gunther v. State, to Use of Bouldin,* 31 Md. 21. See also *Blackburn v. Craufurd,* 22 Md. 447 and *Pole v.*

*Simmons,* 45 Md. 246, as to the powers of the Orphans' Courts within the field of their jurisdiction.

In the instant case the scope of the Orphans' Courts' power of inquiry, not the existence of jurisdiction over the subject matter, is in issue.

*Miller v. Gehr, supra,* also clearly recognized the right of one objecting to the amount of such an allowance to offer testimony and to be heard in the Orphans' Court.

In *Cook v. Aronheim,* 186 Md. 138, 46 A. 2d 105, the Orphans' Court held that it had no jurisdiction to pass on one of the matters excepted to and hence made no decision thereon. This Court held, consequently, that there was nothing for it to pass upon with regard to that exception. In the instant case, however, the Orphans' Court has determined the issue, but has restricted its inquiry into the facts because of its view of the limited scope of its jurisdiction.

The present case is much closer to *Horton v. Horton,* 157 Md. 127, 145 A. 355, and to *Miller v. Gehr, supra.* In the *Horton Case* it was held that the Orphans' Court had acted improvidently in hearing a matter on petition and answer and in refusing to permit the petitioners to introduce evidence in support of their petition for the revocation of letters of administration, which were alleged to have been granted without proper notice to the petitioners. In that case, as in this, the subject matter of the inquiry was within the jurisdiction of the Orphans' Court.

In *Tsaracklis v. Characklis,* 176 Md. 28, 3 A. 2d 725, there were a number of charges of maladministration of the estate of a decedent. Among the expenditures objected to were allegedly excessive funeral charges, the purchase of a cemetery lot with space for thirty graves, the erection of a stone wall and chains around the lot and the purchase of a rather expensive monument. In commenting on the undertaker's charges, which had been incurred without any order of the Orphans' Court, this Court, in an opinion by Chief Judge Bond, said: "Obviously, the amount was excessive by ordinary standards, and placed a heavy burden of proof on the undertaker and the administrator."

It also seems worthy of note that from 1798 until 1922,

with the exception of a period of ten years, under what is now Section 5 of Article 93 of the Code (1951), the Legislature imposed a monetary limit upon the amount of funeral expenses which an Orphans' Court might approve. See Acts of 1798, Chapter 10, Sub-Chapter 101, Section 2; Acts of 1874, Chapter 155; Acts of 1884, Chapter 470; and Acts of 1922, Chapter 329. The ten-year interval was from 1874 to 1884. By the Act of 1874, the $300.00 limitation which had been imposed by the Act of 1798 was removed; by the Act of 1884 it was restored. By Chapter 329 of the Acts of 1922, the general law was amended so as to permit the $300.00 limit to be exceeded by special order of the court. Quite possibly this amendment was a result of the decision in *McComas v. Wiley,* 135 Md. 584, 109 A. 312, decided in 1920, which recognized that the statutory limitation previously in force meant just what it said. (The limit, without special order, was increased from $300.00 to $500.00 by Chapter 18 of the Acts of 1949.)

Chapter 167 of the Acts of 1912, which first enacted the Public Local Law of Baltimore City from which the present Section 6 of Article 93 of the Code (1951) was apparently derived, also contained a limitation of $300.00. This was changed by Chapter 331 of the Acts of 1922, a companion measure to Chapter 329, above referred to, and permitted the $300.00 limit to be exceeded by special order of court. (Chapter 330 of the Acts of 1922 was also a companion measure and made a similar change with regard to real estate sold in equity proceedings in order to pay the debts of decedents. See Code (1912), Article 16, Section 218, now Section 254 of Article 16.)

We find nothing in the legislative history of Section 5 or Section 6 of Article 93 (or of the corresponding local law applicable to Baltimore City) to indicate an intent to throw the estates of decedents open to charges for funeral expenses without any limitation as to the amount thereof other than such as might be described as "what the traffic will bear." On the contrary, we think that the terms of Section 6 of Article 93 impose not only an overall limitation upon cost based upon the condition and circumstances of the decedent

but also upon the component parts which enter into the aggregate charge. If this were not so, the requirement that, unless the validity of the claim is admitted, the Orphans' Court shall take proof as to the amount and validity of the claim and shall determine the *amount* due thereon, would be rather hollow. The amount could be shown by a wholly un-itemized bill, and the issue would then be reduced essentially to a comparison of that figure with the net amount of the estate. That is, in substance, the appellees' contention, and it is also the practical result of the Orphans' Court's view of the limited extent of its own jurisdiction.

We do not agree with that contention for the reason that the Orphans' Court cannot reach an informed decision as to the reasonableness of the aggregate amount of the funeral expenses without considering evidence with regard to the reasonableness of any challenged items which are included in making up that total.

We may add that there is nothing in the evidence to show that the value of the services of the appellees or of any other items lumped together with the cost of the casket is any greater if the price of the casket is large than if it is small; indeed, it is difficult to see how at least some of these charges, such as that for removing the remains, could be dependent upon the cost of the casket. The crux of the dispute seems to be the price of the casket alone; and we can see no reason, in spite of the vague testimony of the undertakers' representative, why that price cannot be definitely determined and stated apart from the other items, or why the price of those other items cannot be definitely and separately stated. If the latter vary in price because of a variation in the price of the casket that fact, too (if it be a fact), and the basis for any such difference could also be shown.

One other matter perhaps deserves special comment in connection with the construction of the statute, although our view of it is implicit in what we have already said. This is the provision in Section 6 of Article 93 which requires the taking of proof as to the amount and validity of the funeral expenses and the determination of the amount due thereon only if the "validity" of the claim therefor is not admitted. It

might be argued that the word "validity" relates solely to the legal foundation, and not to the amount, of the undertaker's claim. We think, however, that such a construction would be unduly narrow and would render the provisions for taking proof as to the "amount and validity" of such a claim and for determining the amount thereof almost, if not wholly, nugatory, since it would be a very rare case indeed in which a claim for funeral expenses could be said to be *wholly* invalid. We, therefore, hold that the requirement for taking proof where the "validity" of the claim is not admitted applies when the dispute relates to the amount of the claim for funeral expenses, as well as where it relates to the legal foundation therefor.

It may be that, in the instant case, when all the relevant facts are before it, the Orphans' Court will find the funeral expenses reasonable in amount. That question, of course, is not before us on the present record, since the lack of such information is the basis for the appeal.

The order appealed from will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

> *Order reversed and case remanded for*
> *further proceedings not inconsistent*
> *with this opinion; the costs of this*
> *appeal to be paid by the appellees.*