(No. 34648.—

ILLINOIS PUBLIC AID COMMISSION, Appellant, *vs.* JAMES H. MASSIE *et al.,* Appellees.

*Opinion filed March 20, 1958—Rehearing denied· May 23, 1958.*

House, J., dissenting.

Latham Castle, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellant.

Epler C. Mills, and C. G. Colburn, both of Virginia, for appellees.

Mr. Justice Daily delivered the opinion of the court:

This appeal, prosecuted by the Illinois Public Aid Commission, is taken from a judgment of the circuit court of Cass County awarding James H. Massie, an undertaker, the full amount of his $994 claim for funeral services against the estate of Nellie Frances Waddell, deceased. The cause had originated in the county court when the commission objected to Massie's claim and the latter appealed to the circuit court from a verdict and judgment for only $650 in the county court. The commission had itself filed claims of $3607 and $136 under authority of section 5—8 of the Old Age Assistance Act, (Ill. Rev. Stat. 1953, chap. 23, par. 440—8,) such claims representing amounts conceded to have been received by the decedent from the State for old age assistance and medical care. We have jurisdiction because the interest of the State is involved.

As was true below, the commission contends that the funeral claim is excessive in view of the insolvent nature of the estate. Relevant facts show that the value of the

estate totalled approximately $2155, of which $1625 was realized from the sale of decedent's modest home. The home had been appraised, however, at $2250. Apart from costs of administration, estimated at $400, the only liabilities are the claims of the undertaker and the State, first and sixth class claims respectively; however, those items produce a deficiency of approximately $3100. Thus it is manifest that the amount recovered by the commission will increase or diminish in proportion to the amount allowed the undertaker. The latter, it appears, was aware that decedent had been receiving old age assistance, had some knowledge of the limited assets of which she died possessed, and the amount of credit he extended was on the basis of the estimated value of the decedent's real estate. Decedent's casket was selected by brothers, sisters and a niece from a stock with prices ranging from $325 to $2000. Without pressure or suggestion from Massie, they chose a casket priced at $750 and a burial vault costing $165, their selection being influenced by decedent's expressed wish "to be buried just like her late husband." The husband had died eight years before and had been buried by the same undertaker at a cost of $479.96, but the uncontradicted evidence is that casket prices then ranged from $175 to $1000 and that the cost of vaults and other items of necessary expense were considerably cheaper.

The commission has stipulated that the sum of $994 represents the fair cash value and the customary charge for the services and merchandise furnished by Massie. Its theory, however, is that the $994 figure is unreasonable and extravagant for the burial of one whose estate is insolvent, particularly when the decedent, to the knowledge of the undertaker, had been receiving old age assistance during her lifetime. In support of such theory we are referred to In re Estate of Purefoy, 256 Ill. App. 523, 526, where it is said: "The mere fact that the cost of the items

for the funeral may be reasonable is not sufficient. In addition to proof of the reasonable cost of the items for the funeral, it must be shown that the funeral expenses were suitable and proper to the condition and station of life of the husband." Massie, while arguing that the expenses were not unreasonable under all the circumstances of the case, also seeks to justify the amount of credit he extended by those cases which point out that an undertaker's materials and services must be furnished immediately when death comes, and hold that it was intended by law that such things be done on the credit of the estate rather than awaiting an inquiry into the financial responsibility of those liable to pay. See *Van Meter* v. *Illinois Trust Co.* 269 Ill. App. 618; *Stevens* v. *Williamson,* 222 Ill. App. 258; *Golsen* v. *Golsen,* 127 Ill. App. 84.

The infrequent but apparently always troublesome question of the amount of funeral expenses allowable against a decedent's estate is the subject of a comparatively recent and thorough annotation found in 4 A.L.R. 2d 995. From the many authorities discussed there, it appears the question is perhaps most simply and ideally resolved in those jurisdictions which have statutes specifically limiting, and placing a ceiling upon, the amount which may be charged against the decedent's estate for such expense. (See: *McComas* v. *Wiley,* 135 Md. 584, 109 Atl. 312, and *Watson* v. *Cook,* 170 Md. 377, 184 Atl. 908, involving a Maryland statute fixing a limit of $300 except by special order of the court; *Succession of Burns,* 199 La. 1081, 7 So.2d 359; and *Succession of Holstun,* (La. App.) 141 So. 793, relative to a Louisiana statute placing a $200 limit on insolvent estates; *Acacia Mutual Life Assn.* v. *Walker,* 45 F. Supp. 756, concerning a West Virginia statute limiting the funeral claim against an estate to $300 unless the excess is ratified by the administrator; *Schroyer* v. *Hopewood,* 65 Ohio App. 443, 30 N.E.2d 440, anent an Ohio

statute providing that an executor may allow $350 for
funeral expenses and that the probate court may allow sums
in excess of that amount; and *Goeth* v. *McCollum*, (Tex.
Civ. App.) 94 S.W.2d 781, treating upon a Texas law pro-
viding for reasonable funeral expense "not to exceed
$500.") Statutes of such nature, however, appear to be the
exception rather than the rule and, unfortunately, have no
counterpart in the laws of this State.

In the absence of statutory mandate limiting or modi-
fying the rule, it is a well settled principle that the amount
which may be charged and allowed against a decedent's
estate for funeral expenses must be reasonable. Equally
certain is the impossibility of fixing an inflexible rule as to
what is reasonable and, in making such determination,
courts look to such factors as the decedent's station in life
and the value of his estate. Other factors entering into the
determination are the solvency or insolvency of the estate,
since the rights of creditors must be taken into considera-
tion, and the effect which the expenditures will have on
the heirs and next of kin, particularly where there are sur-
viving members of a decedent's family basically dependent
upon the estate for support. The latter consideration, how-
ever, is no factor in this case.

Considering first the element of the value of a deced-
ent's estate, we may consider that the $994 expenditure
for funeral purposes in this case comes close to represent-
ing 50 per cent of the estate's assets if we measure those
assets by the actual sum realized from the sale of decedent's
home, or approximately 30 per cent if measured by the
appraised value. Percentagewise, at least, the expenditure
compares favorably to amounts that have been found rea-
sonable in some insolvent estates, but suffers by comparison
to amounts claimed to be unreasonable even though sol-
vent estates were involved. Typical of the latter class are
*In re Cheney's Estate,* 103 Colo, 319, 85 P.2d 729, where

funeral expenses of $850 were found not unreasonable in view of assets of $18,000; *Griffin* v. *Cole,* 60 Ariz. 83, 131 P.2d 989, where the expenses and assets were $600 and $3000, respectively; *In re Miller's Estate,* 50 Dauph Co. (Pa.) 156, where the figures were $982 and $12,000, and *In re Brown's Will,* 274 N.Y.S. 924, where an expenditure of $992, being 25 to 30 per cent of the gross estate, was found to be reasonable. On the other hand, and doubtless based upon considerations of public decency and respect for the dead, it was held in *In re Dix's Estate,* 266 N.Y.S. 418, that an allowance of $763, (a figure stipulated by funeral creditors who had claimed $1520,) was not unreasonable although the estate, that of a former governor, was insolvent. Expenses of $218 were found reasonable in *In re Carpenter's Estate,* 16 Phila. (Pa.) 290, even though the estate was less than half that sum; and in *Pettengill* v. *Abbott,* 167 Mass. 307, 45 N.E. 748, apparent approval was given to the expenditure of the entire assets of $500, even though one item of $307 was for a burial lot. From these decisions, we believe two things emerge clearly. First, that there neither is nor can be a fixed percentage of an estate's value that determines reasonableness, and second, that the factor of value, particularly as it applies in the case of insolvent estates, is overshadowed by the principle that the right of a decedent to proper and fitting burial is paramount, (See: *Van Meter* v. *Illinois Trust Co.* 239 Ill. App. 618,) and by the rule which determines reasonableness by the amount necessary to bury a deceased in the style usually adopted for persons of like rank and condition in society. While we make no attempt at fixing an arbitrary ratio between funeral expenses and the value of an estate, it would seem that compelling and entirely necessary circumstances should be present to justify expenditures totalling from 30 to 50 per cent of the estate.

Within our own jurisdiction recognition and approval

has been given to the majority English and American view that, whether an estate be solvent or insolvent, funeral expenses are to be restricted to the amount necessary to bury the deceased in the style usually adopted for persons of like rank and condition in society. (*In re Estate of Purefoy,* 256 Ill. App. 523, 529; see also *Weinstein* v. *Lotsoff,* 232 Ill. App. 566; *In re Kaercher,* 6 Ohio N. P. NS 459, 4 A.L.R.2d 1006.) Quoting extensively from a text on the administration of estates, the *Purefoy case* recognizes the difficulties of establishing a precise test for what is reasonable and, alluding only to solvent estates, adopts the author's view that circumstances to be considered are: "Public opinion and general expectation, fashion, the feelings of friends and neighbors, the age, standing, property and habits of life of the decedent, as well as the standing and rank in society of the surviving family." The record in the present case shows that the decedent was a kind, industrious and Christian woman, respected in her church and community, and such evidence is offered as showing the reasonableness of the funeral expenditures. Such a suggestion overlooks, however, that we are dealing here with an insolvent estate and that to the circumstances listed in the *Purefoy case,* there must be added the further circumstance of what effect the funeral expenses will have on the creditors of the insolvent estate.

Moreover, reliance solely upon the circumstances relating to the decedent takes no cognizance of the fact that the accepted test for reasonableness can be applied only by comparing the expenditures in this case with those necessary to bury persons of like rank and condition in society. There is a complete absence from the record of any evidence which permits such a comparison to be made. It is true the testimony established that decedent's husband was buried eight years previously at an expense of $479.96, and that costs of materials had almost doubled since that

time, but there is no proof that such was a reasonable expenditure or that the condition of his life and estate paralleled that of the decedent. We cannot ignore that a dominating circumstance in the condition of decedent's life and estate was that, after the death of her husband, she became the recipient of aid provided in this State for "persons who are unable to provide themselves with a minimum standard of living compatible with decency and health." (Ill. Rev. Stat. 1953, chap. 23, par. 436—1.) This circumstance does not, of course, detract from decedent's right to a decent and Christian burial in accordance with her condition in life, but it is a circumstance which directly affects that condition. Massie admitted to knowledge that decedent was receiving public aid and likewise testified that he had, on occasions both before and after the death of the decedent, buried persons who had received similar aid. Yet no effort was made to establish the customary expense and style for the burial of such persons. Until such proof is made, it is our opinion that no determination can be made as to whether the expenditure of $994 was reasonable in this case.

We are not unmindful of the language of the *Purefoy case* which states: "In determining what is reasonable, an undertaker is chargeable only with such knowledge as to the decedent's property, etc., as is apparent on reasonable observation, and is entitled to payment of his demand in full, if in accordance with deceased's apparent condition, although the estate prove insolvent." The facts here show that Massie knew the decedent was receiving aid and, apart from the fact he is presumed to know the law, it is reasonable to assume that he knew, from his previous business experiences, of the State's right to recover from the estate of the deceased. Although Massie's knowledge of plaintiff's condition in life is shown, there is no proof that his demand was made to relate to this condition. Taken

at its face value, the purport of Massie's testimony is that his demand related solely to the fact that the decedent possessed a house valued at $2250, rather than to her rank and condition in society.

On the record presented it is our opinion that the trial court was incorrect in allowing the funeral claim in full. Accordingly, the judgment of the circuit court of Cass County is reversed and the cause is remanded to that court for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE HOUSE, dissenting.